KIDD BROS. LUMBER CO., INC. *v.* TONNIS ET AL.

[No. 18,841. Filed May 5, 1958.]

*Newlin, Rau & Spreen, Arthur J. Iles* and *Lloyd J. Newlin,* all of Indianapolis, for appellant.

*Cook, Bose & Buchanan, Charles W. Cook, Jr.,* and *Albert W. Ewbank,* of counsel, all of Indianapolis, for appellees.

KELLEY, C. J.—Appellant brought this action against the appellees to foreclose a mechanic's lien for materials and lumber allegedly furnished and used in the reconstruction and repair of a house situate on appellees' land. Appellant appeals from a judgment adverse to it on its complaint and for appellees for costs.

The sole question presented and argued by the parties, and the one on which the case must turn, is whether the last material was furnished and delivered by appellant for use in the building under construction within the sixty days prior to the recording of its notice of intention to hold a lien on the land. The notice of lien was duly recorded on January 31, 1952, but the controversy is whether the evidence conclusively establishes that the last materials were furnished and delivered by appellant on December 4, 1951, as appellant claims. The invoices in evidence show that the date of the delivery of material next prior to that of December 4, 1951 was October 24, 1951. Thus the notice of intention to hold a mechanic's lien on the real estate involved was not filed within the statutory time unless the last delivery of material was made on December 4, 1951.

Appellant's contention is that his evidence made a prima facie case that the materials were delivered for use in the premises on December 4, 1951 and that the evidence of appellees on the question of delivery possessed no probative value and, therefore, he was denied relief to which the evidence entitled him. The burden, of course, was on the appellant to establish the material elements of his cause, one of which was that the last materials were delivered for use in the premises on December 4, 1951.

The evidence discloses that the contract for the reconstruction work was between appellee, Tonnis, Jr., and the Associated Maintenance & Builders Company, a partnership composed of one Earl Edwards and Claude C. Ash. Prior to the completion of the work Ash quit and left the job, turning over to Edwards the books, records, and specifications pertaining thereto. Before the institution of appellant's action, Edwards disappeared and his whereabouts was unknown. In addition to other invoices bearing prior dates of claimed delivery of material, appellant put in evidence two invoices, numbered 10569 and 10577, respectively, for the materials under date of December 4, 1951. Neither of these invoices show any delivery receipt. One, No. 10569, bears a written notation that the material was called for but not the name of the person making the call or to whom delivery was made. The other invoice does not indicate the manner of delivery nor the person to whom delivery was made.

To establish the fact of delivery and use of the materials invoiced under date of December 4, 1951, appellant called as its witness, the said Claude Ash. He testified as to the agreement with appellee, Tonnis, Jr.; that he had checked over the invoice and that he had personal knowledge that the materials shown by the exhibit were delivered to and used in the work done

pursuant to the agreement; that he remained on the job for three months but could not say when he started the work; that he and the two or three men working with him put in 342 working hours but that he didn't know the number of days of work; that during the three months, he worked, intermittently, ten days; that he left the job first, turning the records and specifications over to Edwards, and that when he left the house was all finished but the plumbing and landscaping.

The appellee, William E. Tonnis, Jr., testified that the items listed in the invoices referred to as 31 and 32 (the same being invoices numbered 10569 and 10577, dated December 4, 1951, appellant's Exhibit 1) were not delivered to his residence (the property being improved) ; that on said date there was no need for the lumber covered by said invoices; that none of said material was left on the premises; that neither Ash nor Edwards nor any of their employees were doing any work on the house during the months of November and December, 1951; that he had a conversation with Ash and Edwards in the last week of October, 1951, and thereafter neither Ash nor Edwards nor any of their employees ever came back to do any work on the house; and that he completed it.

On cross-examination Tonnis testified that the last work by Ash and Edwards was in the latter part of October, 1951; that he was not living in the house during December, 1951; that the place was vacant; that during December, 1951 he was employed as a district manager of a named newspaper circulation department, with varied working hours, generally between three and six or seven in the morning and a few hours later in the day; that he was not on the premises every hour of the day on December 4, 1951 and that some material could have been delivered to the premises and put in

the premises in his absence. On re-direct examination, he said that he kept a check and watch on the course of construction throughout the building period; that the main floor was completely plastered on November 1, 1951 and the second floor completed as to the erection of all gables, exterior siding, and roof; that the house was locked up in November and December, 1951; and that he completed the construction after Ash and Edwards discontinued in October, 1951. He further testified that the plastering of the unfinished attic was completed in the early part of October; that "during that time" (what time was referred to is not revealed) the workmen did have egress to the premises and did go and come, including Mr. Ash and his workmen; that after the last week in October, 1951 he continued to go back to the house and had personal knowledge of what took place in the way of construction; and that there was no place where the items of materials in question could then have been used in the construction.

Appellant asserts that under the rule announced in the case of *Rhoades* v. *State* (1946), 224 Ind. 569, 70 N. E. 2d 27, the said testimony of Tonnis has no probative value; and that, therefore, appellees have not sustained the burden of showing that the material was not delivered on December 4, 1951, which burden, appellant says, devolved upon them when appellant *prima facie* established such delivery by the evidence of said Ash and the invoices.

The Rhoades case, *supra,* involved an appeal from a conviction of grand larceny. The question was whether the evidence sustained beyond a reasonable doubt that the accused stole an oil drum containing motor oil "the personal goods and chattels of Tecumseh Coal Corporation." A witness testified that he had 12 barrels of oil in his possession which he had sold to and intended to deliver to said corpora-

tion. One of the barrels of oil which was missing was the subject of the theft. The witness stated on cross-examination that the corporation had not paid for the oil and he did not know whether it belonged to him or the corporation; that he was responsible for the oil until it was delivered and it would not be paid for until it was delivered. The court held that the general statement of ownership was overwhelmed by the detailed facts on cross-examination, and said, in part: "When a general statement of ownership is completely disproved by a detailed statement of the facts upon which it is based, and by the same witness, such general statement ceases to exist as a fact in the case. . . . While this court will not weigh the evidence, it will not say that a mere trace or trifle is sufficient to sustain an issuable fact. . . . ."

The evidentiary situation presented by the record in the instant case seems far away from rule declared in the Rhoades case. There are many factors here which the court had the right to consider in weighing the evidence before him. In fact, the same rule which appellant seeks to here apply, with reference to the testimony of Tonnis would seem equally applicable to the evidence given by Ash. The latter stated that he ordered the material from appellant but that he didn't know when he started the work. He also stated he worked on the job only three months. Now, the invoices put in evidence by appellee show the first materials were ordered on August 18, 1951. It seems fair to infer, then, that Ash started the work on or prior to August 18, 1951. During the three months period, Ash said he worked, intermittently, ten days. The dates of the ten days of work were not given by him. He testified that he quit and left the work in charge of Edwards. Again, he gave no date as to when he left. The whole record evidence, however, tends to establish

that he left the job sometime during the month of October, 1951 and never returned to the job. There is no evidence and Ash did not testify that he worked on the job or at the property on December 4, 1951, nor does it appear that any of his employees were working there on said date. Thus, it would seem that his testimony that he had personal knowledge of the delivery of the materials on December 4, 1951 would be severely shaken, if not absolutely disproved, by his own statement of facts.

Tonnis testified that his last conversation with Ash and Edwards was in the last week of October, 1951. That evidence is undisputed. Then he stated that after that conversation neither Ash nor Edwards nor any of their employees returned to the house to do any work. That evidence is undisputed. His further testimony that he completed the work, that there was no need for the itemized lumber on December 4, 1951, that the house was fully plastered on the first day of November, 1951, that during November and December, 1951, the house was locked up, and that there was no place of any kind where the various items of lumber shown on the December 4, 1951 invoices could have been used, and the absence of any proof, other than the said statement of Ash, of actual delivery or receipt or acknowledgment by any person as having received the materials on December 4, 1951, were circumstances and evidence which the court could properly consider and weigh with all the other evidence in determining the probative value of Tonnis' statement that no material was delivered to the premises on December 4, 1951, and the influence thereon of his later testimony that he was not at the premises every hour during the day on December 4, 1951 and that it could have been possible for the material to have been delivered to and used in the premises during his absence. We do not

think the rule announced in the said Rhoades case is applicable to the evidentiary facts here apparent nor do we agree with appellant's contention that testimony of the appellee, Tonnis, Jr., possessed no probative value.

Appellant says in its brief that the "evidence is conclusive, as shown by the invoices contained in Appellant's Exhibit 1, that all of the materials shown in said invoices were delivered to the property in question." Becoming intrigued by this statement, we resorted to the transcript and carefully checked each of 32 invoices referred to in said Exhibit 1, and find no signature, initial, stamp, receipt, or other notation of any kind showing delivery of the materials described to the premises being repaired or to any person thereat. On invoice No. 10577, dated "12-4-1951," appears the apparently written name of "Hurbert Fainon" and on invoice No. 10569, dated "12-4-51," is a name not decipherable but which appears as "Murkert ———," the last name being illegible. No identification of said names or the person referred to thereby appears in the evidence. We, therefore, fail to appreciate the contention that the invoices conclusively show that the materials shown therein were delivered to the property in question. Appellant cites *Kendall Lumber & Coal Co.* v. *Roman et al.* (1950), 120 Ind. App. 368, 91 N. E. 2d 187, as being "Practically an identical case." Reference to that case reveals that the opinion states that "Exhibits Nos. 2 to 16 were invoices *left with the purchaser at his premises at the time the various items of material were delivered to the purchaser's premises. . . . . Some of them were signed by the purchaser,* . . . There is some evidence in the record that all of the materials referred to in the above mentioned exhibits were delivered to the premises of the purchaser." **(Our italics.)** Apart from the statement of Ash that

the materials were delivered to the premises being improved, there is nothing in the invoices themselves in this case establishing the delivery of the materials to the premises, the owner, or the purchaser. Clearly, the said Kendall Lumber & Coal Co. case, *supra,* is not an identical case with the one at hand and is readily distinguishable on the facts.

In his testimony on direct and re-direct examination, the appellee, Tonnis, Jr., gave not only the one general statement that the material invoiced as of December 4, 1951 was not delivered on that date to the premises under construction, but he testified to other matters in support thereof, some of which we have heretofore referred to. His testimony on cross-examination presented to the court the problem and duty of analyzing, balancing, and weighing his oral evidence. Such evidence was not a "mere trace or trifle" but was substantial although conflicting in some parts. In our opinion, his statement of the detailed facts did not overwhelm and completely disprove his prior statement of non-delivery, but, on the contrary, simply imposed upon the trial court the duty, as we have said, of weighing his testimony and determining what part thereof was worthy of belief. The court performed that duty and we cannot disturb its conclusion in that regard. This being an appeal from a negative judgment, the sufficiency of the evidence cannot be challenged. We do not find from the record before us that appellant has demonstrated that it was denied relief to which, under the evidence, it was entitled.

The judgment is affirmed.

NOTE.—Reported in 149 N. E. 2d 828.