**H. Jay GINNS, Janet Ginns and Robert Ginns, Plaintiffs-Appellees,**

v.

**Alexis TOWLE and Nancy Towle, Defendants-Appellants.**

**No. 339, Docket 30269.**

United States Court of Appeals Second Circuit.

Argued April 13, 1966.

Decided June 3, 1966.

Bernard Poliner, Hartford, Conn. (Cole & Cole, Hartford, Conn., on the brief), for plaintiffs-appellees.

Charles A. Watrous, New Haven, Conn. (Bronson & Watrous, New Haven, Conn., on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This diversity action arises out of a collision in Fryeburg, Maine on July 2, 1961 between an automobile owned and operated by the plaintiff, Dr. H. Jay Ginns, in which the other plaintiffs, his wife, Janet Ginns, and his father, Dr. Robert H. Ginns, were passengers, and an automobile owned by the defendant Nancy Towle and operated by the de-

fendant Alexis Towle. All of the plaintiffs are citizens of Pennsylvania, and both of the defendants are citizens of Connecticut. The action was brought in the District of Connecticut and was tried in November, 1965, after pretrial and the issuance of a pre-trial order on May 5, 1965.

Liability was conceded by the defendants and the only issue at the trial was the amount of damages. The jury returned verdicts for each of the plaintiffs as follows: Dr. Robert H. Ginns, $10,000; Mrs. Janet Ginns, $30,000; and Dr. H. Jay Ginns, $25,000. A motion for judgment n. o. v. or a new trial was denied and from that denial the defendants have appealed. We affirm each of the judgments.

The appellants claim that all of the verdicts were excessive. But there was evidence that Mrs. Ginns, who received the largest award, suffered painful and disfiguring facial injuries, as well as some permanent disability. The elder Dr. Ginns, who was 86 years of age at the time of the trial, received several broken ribs, facial cuts and injuries to his left knee and hand and to his back. He also incurred disabilities from which at his age he is unlikely to recover and which have seriously curtailed activities he was accustomed to pursue prior to the collision. The younger Dr. Ginns, who was 57 at the time of the trial, was a dentist with an active practice. He sustained a fractured left kneecap, an injury to the adjacent soft tissue and an aggravation of a pre-existing varicosity of the left leg in consequence of which he was obliged to reduce his professional activity by approximately 20%.

The defendants argued before Judge Zampano on the motion to set aside the verdicts that the awards were excessive; but he, with the advantage of having heard the testimony and of having observed the plaintiffs and the witnesses during the trial refused to do so. We see no reason to disturb his conclusions. Because of the serious and permanent nature of the injuries suffered by each of the plaintiffs "[i]t cannot be said that a

verdict [in the amounts stated] * * so shocks the sense of justice that it compels a conclusion that the jury were swayed by partiality, prejudice or mistake." Turner v. Scanlon, 146 Conn. 149, 162, 148 A.2d 334, 341 (1959); Hook v. Dubugue, 153 Conn. 113, 115–116, 214 A.2d 376 (1965); Nelson v. August, 145 Conn. 347, 349–350, 142 A.2d 726 (1958).

█ Appellants assert that it was error for the trial court to have allowed into evidence testimony which included a description of how defendants' car broke into two sections and was scattered over the roadside, because liability was already admitted. Ordinarily such evidence would have little or no relevancy to the issue before the court and jury and would properly be excluded. The record reveals, however, that there was a dispute concerning the proximate cause of some of the claimed injuries. On this question, to the extent that the cause of an injury would be disclosed or illuminated by a description of some phase of the accident, or the nature of the collision, such evidence would be admissible. If, on the other hand, it is offered simply as a dramatic accompaniment to the evidence of injury for the purpose of enhancing the damages, it should be excluded. How much of this kind of evidence should be admitted, if any, rests largely in the trial court's discretion. In the present case, while the evidence admitted did not appear to have a great deal of probative worth, the trial court kept it within fairly strict bounds and its admission did not constitute an abuse of discretion.

No other points concerning the appeals from the judgments in favor of Janet Ginns and Robert Ginns call for discussion and those judgments are affirmed.

The two remaining questions relate solely to the case of Dr. H. Jay Ginns. On direct examination he was asked and permitted to answer questions, over defense objection, as to whether or not he had developed a varicose condition in the veins of his legs as a result of the accident. The objection was based upon the ground that "there is no claim of any cause of varicosity * * * in the complaint." That objection, which does not appear ever to have been specifically withdrawn, was overruled. Later in the trial Dr. Rechtman, the plaintiff's medical expert, was called to the stand by the plaintiff's counsel and was permitted to testify, among other things, to the matter of varicosity. His testimony was based in part upon an examination made May 11, 1965. Defense counsel objected on the grounds that he had never received a copy of the medical report of that examination, which would have disclosed that varicosity was one of the injuries for which the plaintiff claimed recovery, although the pre-trial order of May 5, 1965 required that a copy of all medical reports be sent to opposing counsel. Plaintiff's counsel said that a copy had been mailed to defense counsel. The trial judge accepted both statements and concluded that the report went astray, for some unknown reason. At a colloquy at the bench with the trial judge and plaintiff's counsel, out of the hearing of the jury, defense counsel examined the medical report and said unequivocally "now that I have seen it, I don't think that I will object." He also said a moment later in the presence of the jury, "I am not making any objection." The natural inference to be drawn from defendants' withdrawal of any objection was that they no longer objected to having the trier consider the claim of varicosity. This is particularly so in view of the fact that the medical report itself was not being offered in evidence and was, in fact, never placed in evidence. Therefore, the objection was not addressed to the admissibility of the report, but to the subject matter of varicosity. Thereafter several questions about varicosity were asked plaintiff's medical expert by plaintiff's counsel without objection by defense counsel. The defendants' counsel now argues that no such plenary withdrawal of objection was intended and that he only meant to consent to references to the contents of the report.

█ There was never any request made for a continuance or other means

by which the defendants could have fairly met the issue which had been injected into the trial. While they had a legitimate cause to protest the springing upon them in the midst of the trial the plaintiff's claim of varicosity, they adopted a strategy of soft-peddling the issue during the submission of evidence all with a view to seeking a mistrial, a motion for which was filed on the final day and argued after both sides had rested but before the summations had been delivered. By withdrawing their objection to the testimony about varicosity or by failing to make clear to the court that they were making only a very limited concession relating to references to the report and were nevertheless preserving their basic objection to the interjection of the claim of varicosity into the case, they relinquished the right to the relief to which they would otherwise have been entitled. Under the circumstances we think that the trial court committed no error in this regard.

This court has not had an occasion to pass specifically upon the effect of the failure of defense counsel to receive from plaintiff's counsel a medical report to which defendants were entitled under a pre-trial order in the face of a claim by the plaintiff's counsel, who had the duty to deliver it, that he had mailed it in timely fashion.

■ In the present case the trial judge assumed that the report went astray in the mail for reasons beyond the control of the parties and their counsel. The effect of this was to permit plaintiff's counsel to violate the pre-trial order with impunity. The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid the very kind of surprise practiced upon the defense in this case. Although at the trial appellee's counsel made some mention of a letter in connection with sending the report, he was asked during oral argument on appeal whether he had a copy of a covering letter mailed with the report or other evidence of its hav-

ing been sent and he said that there was none. It must be emphasized that the burden of proving compliance with a pre-trial order rests upon the party whose duty it is to comply with the order. The plaintiff was ordered to "furnish the defendants with copies of all medical reports * * *." This required proof of delivery of the report in question to defense counsel or at least to his office. The simple statement by plaintiff's counsel that he mailed it does not suffice. In view, however, of the defendants' withdrawal of objection after being given an opportunity to examine the report when it was first referred to on the trial, the trial court was not bound to impose the sanction of barring the subject matter of the report from evidence.

■ Appellants also argue that there was not sufficient proof of aggravation of a pre-existing condition of varicosity as a result of the accident to submit that issue to the jury or, indeed, that there was any evidence that any varicosity was caused or affected by the accident. The plaintiff's medical expert, however, expressed the opinion, based upon his examination of the plaintiff after the collision, that the plaintiff had suffered from some varicosity before the accident which had been worsened by the collision. He was unable to state the precise degree or percentage of aggravation involved. The plaintiff, himself, testified that he had not suffered from varicosity before the accident and that he had been able to put in a full day's work at his profession without difficulty. He further stated that because of varicosity and the accompanying swelling of his legs after the accident his work day had to be substantially curtailed. The condition of his legs was shown to the jury and was the subject matter of considerable testimony both by the medical expert and the plaintiff. There was sufficient evidence for the jury to draw the inference that the plaintiff may have had some varicosity that was not so advanced as to be in any degree disabling prior to the accident but as a result of it the condition was there-

by so aggravated that he could only work in a standing position, as he was required to do, for limited periods. Boland v. Vanderbilt, 140 Conn. 520, 525, 102 A.2d 362 (1953). Proof of aggravation cannot be shown by exact degrees or percentages and, while the matter should not be left purely to guess or surmise, there was enough evidence in this case to support the finding that a non-disabling pre-existing condition of varicosity was worsened and made partially disabling by the collision. Gervais v. Foehrenbach, 149 Conn. 461, 464–465, 181 A.2d 253 (1962); Mourison v. Hansen, 128 Conn. 62, 20 A.2d 84, 136 A.L.R. 413 (1941); Flood v. Smith, 126 Conn. 644, 13 A.2d 677 (1940); see, 2 Harper & James, Law of Torts, § 20.3, at 1127–1130 (1956).

We have considered appellants' other claims of error, and find them to be without merit. The judgments are accordingly affirmed.