WESTERN & SOUTHERN INDEMNITY COMPANY
ET AL. *v.* CRAMER.

[No. 15,215. Filed October 15, 1937.]

*Louis E. Smith, Donald L. Smith,* and *Harry D. Beggs,* for appellants.

*S. K. Ruick,* for appellee.

KIME, J.—This action was brought by Harry W. Cramer against Western & Southern Indemnity Company, American Liability and Surety Company of Cincinnati, Ohio, as sureties on the construction bond given to the board of school commissioners of the city of Indianapolis and the principal on said bond, J. G. Karstedt Construction Company, and Clarence C. Shipp, its receiver, to recover for lathing and plastering a certain school building in accordance with a contract entered into between said Cramer and the construction company which was constructing the school building known as School No. 69 for the board of school commissioners of the city of Indianapolis. The bond was executed by The Ameri-

can Liability and Surety Company of Cincinnati, Ohio, whose name was changed, after the execution of the bond in question, to Western & Southern Indemnity Company.

Separate demurrers to the complaint were filed by said sureties for want of facts, and the same were overruled. Afterwards separate motions to strike out parts of the complaint were filed by the sureties which were overruled. Thereafter an answer in five paragraphs was filed by them, the first being a general denial; the second alleged that the sum of $2,508.17 had been paid to the Clerk of the Marion Superior Court by the school board and asked that that amount be set off against any sum found due Cramer; the third was a plea of payment; the fourth alleged, in substance, that the J. G. Karstedt Construction Company had entered into a contract with the school board of Indianapolis for alterations and additions to School No. 49 for which Cramer had a contract with said construction company to do the plastering; that the sum of $2,632.00 was paid to Cramer by the construction company out of money received from the construction of School No. 69, which Cramer wrongfully applied to a balance due him from said construction company on School No. 49; and the fifth alleged certain failures on the part of the architect to require the contractor to furnish releases for labor and material in violation of the terms of the contract. Cramer then filed four paragraphs of reply to this answer; the first admitted the receipt of $2,508.17; the second was a general denial to the third paragraph of answer; the third set up a former adjudication to the questions involved in this case; and the fourth was a general denial to the fifth paragraph of answer. A demurrer of the said sureties to the third paragraph of reply was filed and sustained. The complaint was dismissed as to the construction company and its said receiver.

On the issues thus formed trial was had by the court and judgment was rendered in favor of Harry W. Cramer, against the Western & Southern Indemnity Company and American Liability and Surety Company in the sum of $1,692.33 as principal, $360.48 as interest, and $200.00 as attorneys' fees, together with costs.

Separate motions for new trial were filed by appellants which were overruled and this appeal followed. The errors discussed are that the court erred in overruling: (1) the separate demurrers of each of the appellants to the complaint; and (2) the motion for new trial, the grounds of which that are discussed being; (a) error in the assessment of the amount of the recovery in that it was too large; and (b) that the decision was contrary to law and was not sustained by the evidence.

The bond herein reads as follows: "KNOW ALL MEN BY THESE PRESENTS, That the undersigned J. G. Karstedt Construction Company, Inc., of Indianapolis, Indiana, principal, and American Liability and Surety Company as surety, are held and firmly bound unto the board of school commissioners of the city of Indianapolis, a common school corporation of the State of Indiana in the penal sum of one hundred fourteen thousand eighty and 00/100 (Dollars) for the payment of which well and truly to be made, without relief from valuation or appraisement law, and with attorney's fees, we hereby jointly and severally bind ourselves, our respective heirs, administrators, executors, successors and assigns:

"WITNESS our hands and seals this 15th day of November, 1930, at Indianapolis, Indiana.

"The condition of this obligation is such that whereas, the above named principal has entered into a written contract with the above named obligee, dated November 15, 1930, wherein the said principal has agreed to do

all the work and furnish all the materials in and about the construction of the building hereinafter mentioned, and to build and complete ready for use before the date for such completion named in said contract—General Contract—located Keystone Avenue and Thirty-Fifth Street, in the city of Indianapolis, Indiana, known as School 69, agreeable to the terms of said contract, a copy of which is hereto attached and is to be read as a part of this obligation:

"Now therefore if said J. G. Karstedt Construction, Company, Inc. principal herein shall in all things well and faithfully perform said contract, and shall well and truly pay all money payable by said principal according to and agreeably within the terms of said contract, then this obligation shall be void otherwise it shall be and remain in full force and effect.

"It is agreed and understood that no extension of time given to the principal obligor, for the performance of said contract or any portion thereof, and no change or alteration in the work to be done under said contract, shall release the surety herein.

"WITNESS our hands and seals, this, the day and year first above written.

"J. G. Karstedt Construction Co., Inc.,
By Charles Padget, President.
"American Liability & Surety Company,
By H. H. Wells, Atty.-in-fact."

Appellants contend that the court erred in overruling their separate demurrers to the complaint herein for the reason that the bond is an official bond and therefore suit thereon should have been brought in the name of the State of Indiana on the relation of Harry W. Cramer as provided by Acts of 1881 (Spec. Sess.) ch. 38, §10, p. 240, being §2-203 Burns 1933, §18 Baldwin's 1934. The Acts of 1911, ch. 173, §2, p. 437, as amended by the Acts of 1925, ch. 44, §2, p. 129 and the

acts of 1931 ch. 168, §2, p. 581 and the acts of 1933, ch. 258, §2, p. 1142, being §53-202 Burns 1933, §14085 Baldwin's 1934, in reference to actions by materialmen against sureties on contractor's bonds says "Such person, firm or corporation may bring an action in a court of competent jurisdiction *in his or its own name* upon such bond." (Our italics.) Section 2-203 (§18 Baldwin's), *supra,* is a general statute while §53-202, (§14085 Baldwin's), *supra,* is a special statute and the law is well settled that a special statute enacted subsequently to a general statute supersedes the general statute, therefore, this action was properly brought and appellants' separate demurrers were properly overruled.

Appellants claim that the bond herein does not comply with the statute in that it was made payable to the board of school commissioners and not the State of Indiana. On authority of *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, the holding must of necessity be that since the law made the bond necessary, the parties must be deemed to have had the law in contemplation when the contract was executed and therefore since the bond should have been made to the State of Indiana it will be considered as so being.

Appellants next contend under ground "a" of their motion for new trial as above set out that it was error for the court to allow attorneys' fees because the bond and contract sued upon did not authorize or warrant their assessment. We have read the bond together with the Acts of 1911, 1925, 1931, and 1933, *supra,* all of which are a part of the bond sued on, whether written in said bond or not and form the contract upon which both the rights and liabilities of the surety are determined (*United States Fidelity etc., Co.* v. *Poetker, supra,* and find that attorneys' fees for the benefit of materialmen are provided for for the reason

that part of the statute under which this bond was given says "Such bond by its terms shall be conditioned as to directly *inure* to the benefit of sub-contractors, laborers, materialmen and those performing service as herein provided who may have furnished or supplied labor, material or service for and on account of the construction of any such public work or improvement or directly in connection therewith or relating thereto." (Our italics.) When the statute is read into the bond the appellee here would be included and applying the provisions of the contract to the bond the obligation to pay attorneys fees by virtue of the contract is apparent. If the provision with regard to attorneys' fees in the bond does not *inure* to the benefit of those who are compelled to sue on the bond such proviso would seem to be meaningless.

Appellants also present a question "as to the right of the appellee to take money paid to the J. G. Karstedt Construction Company for the construction of School No. 69, which money was then paid to appellee by said J. G. Karstedt Construction Company, and which appellee then credited not on the account of appellee growing out of his work done on School No. 69 but on work previously completed by appellee for said construction company on another school building known as School No. 49." Appellants say and appellee concedes the general law relative to the application of payments to be that the debtor has the right to direct where a payment should be applied in the event the debtor is indebted on several accounts to the creditor, and on the debtor's failure to so designate the creditor has the right to apply payments received to whatever debt he may choose and then both parties failing to make application allowing the court to do so, but appellants insist that there is an exception to the above rule where the proceeds of the payment are the fruits of the very

contract covered by the obligation of the surety and in such event that the application of such payment to some other indebtedness of the debtor by the creditor, with or without the consent of the debtor, does not bind the surety, and the surety in such case has a right to have the payment applied to the indebtedness covered by the surety bond.

There is nothing in the record to indicate that there was any failure on the part of the appellee to apply any payment which he received from said contractor hence the question of allowing the court to make the application of the payments is not here involved.

The evidence is conflicting as to whether the contracting corporation directed that the money so paid to appellee should be applied to a specific account, therefore, the court below having, as its judgment indicated, found that there was no specific direction, we are bound by such finding.

We have read the evidence and there is no indication that appellee had any knowledge as to the source of the payments made to him, but whether appellee had such knowledge or not makes no difference in this case.

Appellants do not cite and we have been unable to find any Indiana cases supporting the exception for which they contend. The bond contains no such agreement nor is there any such a provision in our statutes. From the evidence and the finding predicated thereon we must assume that the contracting corporation received its money unconditionally as its own to do with it as it liked, over which money its surety had no control. The surety could only have directed the application of payments between the contractor and appellee if such funds were not owned by the debtor (contractor) but were held by it subject to some specific agreement in favor of the surety. Had the surety in its bond provided that the funds received by the contractor from

this particular job were to be disbursed specifically in payment of labor and material going into the structure we would have had a different question presented.

If the exception appellants contend for is allowed without a special agreement to that effect disclosed by the bond a chaotic condition would result when it developed that the contractor had paid some money to one who did not furnish material to a structure from which the contractor received the money and on which a bond was given for then the surety would have the right to take the payment away from the one who received it from the contractor and this would lead to instability in the commercial world that should not have the approval of this court because it is lacking in sound business principles. The annoying and unsatisfactory results are plain to be seen if a creditor, before he accepts payments from a debtor, must halt and make inquiry as to his creditor's standing with his surety.

Had the contractor so desired he could have protected himself by requiring a bond from the appellee conditioned that all money paid to appellee by the contractor from money which he received from the improvement on which the bond herein was given should be applied to a certain account. Had the surety so desired it could have made as a part of the bond an agreement with the contractor to protect itself from such a contingency as has arisen here. We do not lose sight of the fact that our statutes require a bond in the construction of improvements as herein but there is no legal or other compulsion for a personal surety or surety company to execute such surety bonds. A surety becomes such voluntarily either for or without compensation and it is within the province of the surety to insist upon such arrangements as he desires as a condition precedent to his becoming surety.

In *Salt Lake City* v. *O'Connor et al.* (1926), 68 Utah

233, 249 Pac. 810, in which case the facts are similar to the instant case, the court cites and reviews several cases and arrives at the same result we reach here on this proposition and aptly says (p. 242) :

"In the public interest commercial transactions should not be fettered. The necessary complications of modern business should not be increased by avoidable additions. Money released into trade should be permitted to circulate freely, unburdened by hidden equities or liens. In transactions like the one under consideration, the surety has ample facilities for protecting itself. It may with propriety reserve and exercise a surveillance over the disbursements of the proceeds of contracts for the performance of which it is surety. Materialmen dealing with contractors cannot do so. They cannot, consistent with business proprieties, inquire into the sources of money paid them. When a surety as in the case at bar, permits money on the contract to be paid the contractors unconditionally, which it must know he may use for general purposes, we see no sufficient reason for sustaining any claim or equity in behalf of the surety, in such money, after it has been paid to another in the due course of business. The risk of such a loss is one of the hazards which the surety, for a fixed consideration assumes by its contract." See also *Mack* v. *Colleran* (1892), 136 N. Y. 617, 32 N. E. 604; *Chicago Lumber Co.* v. *Douglas* (1913), 89 Kan. 308, 131 Pac. 563; *Radichel* v. *Fed. Surety Co.* (1927), 170 Minn. 92, 212 N. W. 171; *Standard Oil Co.* v. *Day* (1924), 161 Minn. 281, 201 N. W. 410, and cases there cited. We, therefore, hold that the decision herein is not contrary to law and is sustained by the evidence.

The judgment of the Shelby Circuit Court is in all things affirmed.