STEPHEN VAN WELLS, MONARCH CO., INC. *v.* STANRAY CORP.

[No. 2-674A145.  Filed February 4, 1976.]

*John L. Fox,* of Indianapolis, for appellants.

*Gordon D. Wishard, Smith, Morgan & Ryan,* of Indianapolis, for appellee.

SULLVIAN, J.—A judgment in the sum of $10,393.45 was entered against defendants Stephen Van Wells and Monarch Co., Inc., after a trial without jury upon plaintiff Stanray Corporation's complaint for foreclosure of mechanic's lien. Stanray Corporation, d/b/a Burnet-Binford Lumber Co. (hereafter Stanray),[1] premised is claim upon the supplying of defendants with certain of the materials used by defendants in renovating a fire-gutted house. The real estate in question, which is situated on 131st Street close to Noblesville, Indiana, was ordered sold on foreclosure of Stanray's lien.

The broad issue presented is whether the judgment is supported by sufficient evidence upon all necessary elements of plaintiff's claim. The only serious argument made by

---

1. It appears from the record that Burnet-Binford operated as a subsidiary of Stanray until the summer of 1970, at which time the two corporations merged, with Stanray the surviving corporate entity and Burnet-Binford as a division of Stanray.

appellants is that Stanray failed to show its compliance with the terms of Ind. Ann. Stat. 32-8-3-3 (Burns Code Ed. 1973), which requires a materialman to file a notice of intent to claim a lien within 60 days after furnishing the materials for which the indebtedness is said to lie.[2]

The evidence construed most favorably to Stanray reveals that Monarch and Stanray's division, Burnet-Binford Lumber Co., entered into an oral agreement in July of 1971, under the terms of which Burnet was to supply building materials to Monarch for the latter's "131st Street job". The 131st Street Job, also called the "Noblesville job" by the parties, consisted of Monarch's work on the subject realty. Monarch was the record owner of the property when the contract was made and Monarch's president so represented the ownership to Stanray's agents. However, the parties stipulated that Monarch gratuitously transferred the property to one of its employees, William Turk, on June 1, 1971, the deed being recorded in September. About the time Turk left Monarch's employ, the property was transferred, again for no consideration, to Turk's replacement, defendant Van Wells. The deed to Van Wells was dated and recorded on November 11, 1971. There was testimony that Turk, and later Van Wells, permitted title to the property to be placed in their respective names at the insistence of, and solely for the financial benefit of, their employer Monarch. Burnet-Binford at all times during its dealings with Monarch conducted itself in reliance on Monarch's implied and express representations that Monarch was the true owner of the property.

The parties have stipulated that all the materials represented by plaintiff's Exhibit 2 "were, in fact, ordered and delivered to Monarch." Exhibit 2 consists of 45 invoices and

---

2. Despite the admission in their brief that "the single issue on appeal is to the timeliness of the Notice of Lien", defendants attempt to argue that there was insufficient evidence to sustain a personal judgment against defendant Van Wells. We deem this latter issue waived due to appellants' failure to cite any authority in support of the argument. Ind. Rules of Procedure, AP. 8.3(A)(7).

delivery tickets prepared by Stanray employees listing materials sold on credit to Monarch for the "131st Street job." Most of the delivery tickets are signed by various agents of Monarch who picked up the materials from Stanray's branch office. The sum of the amounts shown due on the invoices equals the $8,178.21 principal included in the judgment.

The first of the delivery tickets is dated July 27, 1971; the last in time bears the date of October 18, 1971. All materials, including those shown on the October 18 delivery ticket reached the building site. Stanray filed its notice of intent to hold lien on December 16, 1971, just under 60 days from the date of delivery shown on the final ticket.

## SUFFICIENT EVIDENCE FOR TRIAL COURT TO FIND NOTICE OF INTENT TO CLAIM LIEN TIMELY FILED

The statute under which Stanray claims its lien is Ind. Ann. Stat. 32-8-3-1 (Burns Code Ed. 1973), which reads, insofar as pertinent:

> "Contractors, subcontractors, . . . journeymen, . . . and all other persons . . . furnishing materials or machinery, . . . for the erection, altering, repairing or removing any house, . . . may have a lien separately or jointly upon the house . . . for which they may have furnished materials or machinery of any description, and, on the interest of the owner of the lot or parcel of land on which it stands . . . to the extent of the value of any . . . materials furnished. . . ."

The question of the timeliness of Stanray's filing of notice of intent to hold lien centers upon Ind. Ann. Stat. 32-8-3-3 (Burns Code Ed. 1973), compliance with the terms of which has been held to be an absolute condition to an effective lien. *Gooch* v. *Hiatt* (1975), 166 Ind. App. 521, 337 N.E.2d 585; *Ellis* v. *Auch* (1954), 124 Ind. App. 454, 118 N.E.2d 809. The statute reads in its pertinent parts as follows:

> "Any person who wishes to acquire a lien upon any property, . . . shall file in the recorder's office, at any time within sixty [60] days *after . . . furnishing such materials*

*. . . described in section 1* [32-8-3-1] of this act. *. . ."* (Emphasis supplied).

The essence of the controversy is whether the item shown on the delivery ticket dated October 18, 1971, was actually "furnished" Monarch by Stanray on that date so that the 60-day period did not begin to run against Stanray until after October 18. If, as defendants contend, the item shown on the October 18 delivery ticket was not in fact "furnished" on that date, then the last delivery of goods disclosed by either an invoice or delivery ticket was September 15, 1971, in which case Stanray's notice would not be timely.

Appellants Van Wells and Monarch correctly point out that:

"Indiana law places a burden upon a mechanic's lienholder who seeks to foreclose such a lien to show that the purported lien meets all statutory requirements necessary to its creation. *Hough* v. *Zehrner* (1973), [158] Ind. App. [409], 302 N.E.2d 881; *Kidd Bros. Lumber Co., Inc.* v. *Tonnis et al.* (1958), 128 Ind. App. 459, 149 N.E.2d 828." *Gooch* v. *Hiatt, supra,* 337 N.E.2d at 587.

However, when asked to reverse the trial court's finding that the lien claimant has successfully carried his evidentiary burden, we may not do so unless convinced that such finding is "clearly erroneous." Ind. Rules of Procedure, Appellate Rule 15(M). In applying the "clearly erroneous" standard, we view the evidence in the light most favorable to the appellee without attempting to either reweigh that evidence or adjudge the credibility of witnesses. *Gooch* v. *Hiatt, supra.* The question before us is thus whether the evidence most favorable to Stanray reveals that the trial court clearly erred in finding that Stanray "furnished such materials" to Monarch as late as October 18, 1971.

As stated by this court in *Foster* v. *Sigma Chi Chapter House* (1912), 49 Ind. App. 528, 531-532, 97 N. E. 801, 802:

"The right of a materialman to enforce a lien for the value of materials furnished by him is limited to cases where the following facts appear: The improvement must be made by the authority of the owner of the real estate, the material

must be sold, not generally to the contractor, but for the purpose of being used in constructing the particular building, the materials must be actually used in constructing the building, and *the notice of the intention of the material-man to hold a lien against the property must be filed,* as required by law, *within sixty days after furnishing such materials. Topp* v. *Standard Metal Co.* (1911), 47 Ind. App. 483; *Barnett* v. *Stevens* (1896), 16 Ind. App. 420, 431; *Clark* v. *Huey* (1895), 12 Ind. App. 224, 232; *Leeper* v. *Myers* (1894), 10 Ind. App. 314, 316; *Miller* v. *Fosdick* (1901), 26 Ind. App. 293." (Emphasis supplied).

Thus, the 60 day period is computed from the date of the last furnishing of "such materials", i.e., materials sold for use in constructing the particular improvement which the owner of the real estate has authorized, and which are in fact used in that construction. *See Ellis* v. *Auch* (1954), 124 Ind. App. 454, 118 N.E.2d 809; *Jackson* v. *J. A. Franklin & Son* (1939), 107 Ind. App. 38, 23 N.E.2d 23; *Foster* v. *Sigma Chi Chapter House, supra.*

As noted, the parties stipulated that the materials shown on the October 18 delivery ticket were ordered by and delivered to Monarch for use in constructing the building on the subject realty. Testimony corroborated the natural inference that the delivery took place not earlier than the date stated on the ticket. Hence the only issue in doubt as to whether the materials evidenced by the October 18 delivery ticket were "furnished" within the meaning of the statute is whether the items shown on the last ticket were actually used in the building.

An exception to the general rule that the materialman acquires no lien as to particular materials unless the materials are incorporated into the structure arises when the materialman deals directly with the property owner. As this court stated in *Moore and Richter Lumber Co.* v. *Scheid,* (1918), 68 Ind. App. 694, 698, 121 N.E. 91, 92:

"However, it is not *always* necessary to show that the material furnished actually went into the building, since

the circumstances in a particular instance, especially where, as in the present case, the material was furnished to the owner of the building to be used herein, may be such as to estop such owner in a foreclosure suit from invoking the general rule. *Totten & Hogg Iron, etc., Co.* v. *Muncie Nail Co.* (1897), 148 Ind. 372, 47 N.E. 703; *Smith* v. *Newbaur* (1896), 144 Ind. 95, 105; 42 N.E. 40, 1094, 33 L.R.A. 685; *Scott* v. *Goldinghorst* (1890), 123 Ind. 268, 270, 24 N.E. 333; *Hill* v. *Braden* (1876), 54 Ind. 72, 76; *City of Crawfordsville* v. *Barr* (1873), 45 Ind. 258, 261; *Welch* v. *Sherer* (1879), 93 Ill. 64, 67." (Original emphasis). *See also O'Hara* v. *Architects Hartung and Ass'n.* (1975), 163 Ind. App. 661, 326 N.E.2d 283; 39 A.L.R.2d 394, 437.

The estoppel exception has been held to apply when the owner diverts the materials to a use other than the construction for which they were supplied without the materialman's knowledge or consent. *Ohio Oil Co.* v. *Fidelity & Deposit Co.* (1942), 112 Ind. App. 452, 42 N.E.2d 406; *Moore and Richter Lumber Co.* v. *Scheid, supra.* Another example of the estoppel rule's application is the situation in which the owner for some reason of his own fails to complete the proposed structure so that the materialman's goods are unused. *See, e.g., O'Hara* v. *Architects Hartung and Ass'n., supra* (rule applied in favor of an architect-mechanic); *Jackson* v. *J. A. Franklin & Son, supra.*

Similar to the estoppel exception is the rule that materials actually delivered are presumed to have been used in the building. As stated by this court in *Kendall Lumber & Coal Co.* v. *Roman* (1950), 120 Ind. App. 368, 376, 91 N.E.2d 187, 190-191.

"In 36 Am. Jur., p. 168, § 275, it is stated:

'While there are some cases to the effect that the use of the materials must be shown, the indirect implication of which seems to be that evidence of mere delivery is not sufficient to show their use, the cases which have directly passed upon the question are inclined to the view that delivery of materials at the place of use prima facie establishes the fact of their use, and places the burden of showing the contrary upon the owner of the building. Along this same line it is generally held sufficient to show that the materials

were purchased for use in and were delivered at the building, and that some of the materials furnished, or that materials of that character, were used in the building. Where it is proved that part of the materials delivered were actually used, the presumption of use of all the materials, arising from delivery, is, of course, stronger.' The burden is on the owner to show the materials were not used on the building. 36 Am. Jur., p. 166, § 272, n 3." *See also* 39 A.L.R.2d 394, 427-428.

Stanray argues that, under either an estoppel theory or because of the rule that use is presumed upon proof of delivery, sufficient evidence exists for the trial court to have found that the materials shown on the October 18, 1971 delivery ticket were used.

We agree with Stanray that sufficient evidence exists to establish that the goods shown on the last delivery ticket were used in the building, because use is presumed upon proof of delivery. Such a holding makes it unnecessary for us to resolve the question of the applicability of the estoppel exception presented by the fact that Monarch held itself out as the owner of the property notwithstanding record title being held by Turk and later Van Wells.

The evidence showed that the items shown by the October 18 delivery ticket were ordered by Monarch, fall within the materials specified in § 32-8-3-1, *supra,* and were actually delivered to the building site on or after October 18. Testimony and photographs indicated that materials of the type shown on the last delivery ticket were incorporated into the structure. The presumption thus arising that the goods delivered on October 18 were in fact used was not rebutted by defendants.

The judgment is therefore supported by the evidence and is hereby affirmed.

White, J., concurs; Robertson, C.J., concurs (sitting by designation).

NOTE.—Reported at 341 N.E.2d 198.