**G. C. TEMPLETON, Jr.,
Defendant-Appellant,**

v.

**SAM KLAIN & SON, INC.,
Plaintiff-Appellee.**

No. 881S222.

Supreme Court of Indiana.

Aug. 31, 1981.

Charles G. Reeder, Johnson & Weaver, Indianapolis, for defendant-appellant.

Marvin Mitchell, Eskenazi, Mitchell, Yosha & Hurst, Indianapolis, for plaintiff-appellee.

PRENTICE, Justice.

Plaintiff, Appellee, Sam Klain & Son, Inc., formerly the Sam Klain & Son Partnership (Klain) recovered a judgment against the defendant, Appellant (Templeton) in the sum of $9,071.90 principal and interest, plus attorneys' fees in the sum of $3,200.00, for a total of $12,271.90, together with an order of foreclosure and sale, pursuant to its suit upon a mechanic's lien held under Ind.Code § 32–8–3–1 (Burns 1973). Thereafter, Templeton initiated appellate proceedings and Klain petitioned for and was awarded an additional sum for attorney's fees in the sum of $2500.00, secured by the lien and payable in the same manner as the judgment, in defense of the judgment on appeal.

Templeton's appeal was perfected and resulted in an affirmance of the trial court's judgment, except with respect to the award of the additional attorneys fees, and in this regard, it was reversed. The decision and opinion of the Court of Appeals, First District, may be found at 400 N.E.2d 1198.

The matter is now before us upon the petitions to transfer filed by both parties, and transfer is now granted pursuant to Ind.R.App.P. 11(B)(2)(b) in that the Court of Appeals has erroneously decided a new question of law, i. e. the entitlement to attorneys fees under Ind.Code § 32–8–3–14 (Burns 1973) incidental to the defense on appeal of the initial judgment; and the aforesaid decision and opinion of the Court of Appeals is now ordered vacated.

The appeal presents four (4) issues:

(1) Did the trial court err in finding that the materials furnished had not been paid for?

(2) Did the trial court err in holding, under the facts of this case, that evidence of delivery of the materials to the job site established a presumption that they were incorporated into the improvements for which they were furnished?

(3) Did the trial court err in holding that Templeton was personally liable for the amount secured by the lien?

(4) Did the trial court err in awarding Klain attorney's fees incidental to the defense, on appeal, of the initial judgment?

\*　　\*　　\*

 The facts necessary for understanding the issues are as related in the opinion of the Court of Appeals, authored by Judge Robertson; and we adopt the opinion of that Court upon Issues One (1), Two (2) and Three (3), as follows:

" \* \* \* G. C. Templeton, Jr. (Templeton), the appellant-defendant, owned real estate in Indianapolis which he wished to develop, with himself as general contractor, into condominium units known throughout litigation as the 'Overlook' project. In 1974, Templeton and the Dallas Company (Dallas) entered into an agreement whereby Dallas would perform the plumbing and heating work on the project. Dallas began work on the project in August of 1974 and continued until February 21, 1975, when Dallas was forced out of business by a secured creditor. Dallas had gotten supplies and materials for the project from the appellee-plaintiff, Sam Klain & Son, Inc., formerly the Sam Klain & Son partnership (Klain), with whom Dallas had been doing business for some time.

"The trial court found that Klain had not been paid by Dallas for materials incorporated into the Overlook project in the amount of $7,674.86. The trial court further found that Templeton was indebted to Dallas in a sum in excess of $7,674.86. The trial court also found that Klain had fulfilled all the statutory notice and filing requirements necessary to obtain a mechanic's lien. Judgment for the above sum, interest and attorney's fees was awarded to Klain against Templeton and an order to foreclose a mechanic's lien also given. This appeal began and the trial court further ordered attorney's fees to be given for defending the judgment on appeal.

"The first issue presented for review is whether the trial court erred in finding that the materials which are the subject of the lien were not paid for by Dallas. The problem is one of application of the sums paid to Dallas by Templeton and those paid to Klain by Dallas. We first review the payment practice of the parties in this case. Dallas had done business with Klain for a number of years previous to the job out of which this case arises. Klain's method of billing was through the use of invoices, on which there was a number which signified the job for which Dallas was using the materials. Klain reviewed those invoices to check on how much credit was being given on any one job. The trial court specifically found that Klain extended credit based on the job on which Dallas was working. Klain kept, however, one open account for Dallas and did not keep job by job accounts. A monthly total was kept and the amounts owing were split in the length of period the account was due or overdue. As payments came in, Klain applied the sums, not on a job by job basis, but rather to the oldest invoices due. Dallas was aware of the Klain billing method. At the start of the Overlook job, Dallas had an unpaid balance of over $100,000.

"Templeton paid Dallas six times, once a month, starting September 10, 1974, a total sum of $85,976. The check with which Templeton paid Dallas contained a restrictive endorsement that stated in part, 'Payee certifies ... that he/it has paid for all labor and material for which this check is payment.' Templeton did keep a retainage for work done each month. Dallas placed the sums from these checks into a general account with other funds from other sources. During the period of September 10, 1974 through January 13, 1975 Dallas made six payments to Klain on Dallas' account in the total sum of $102,438.79 and

also received credit from Klain for returned goods in the amount of approximately $45,-000.00. Again, these credits and payments were applied to the oldest outstanding invoices.

"When Dallas' secured creditor forced Dallas out of business on February 21, 1975, Klain had not been paid under this method for materials used on the Overlook project in the amount of $7,674.86.

"Templeton does not question the general rule in the application of a partial payment by a debtor to a creditor to whom more than one debt is due that the debtor has the right at or before payment to direct the application of the payment to whatever debt or debts he chooses, and if the debtor fails to do so the creditor may make the application as he sees fit. *Western & Southern Indemnity Co. v. Cramer*, (1937) 104 Ind.App. 219, 10 N.E.2d 440. It has also been stated that if neither the creditor nor the debtor allocates, the court will apply the payments as justice dictates, generally to the advantage of the creditor in the absence of supervening equities. *See American Oil Co. v. Brown Paving Co.*, 298 F.Supp. 528 (S.D.S.C.1969) (and cases cited therein). It has also been said that, in regard to running accounts, the law will make the appropriation to the oldest account first. *Born v. Union Elevator Co.*, (1918) 67 Ind.App. 97, 118 N.E. 973.

"Templeton attempts to invoke an exception to this rule recognized in a growing number of jurisdictions which limits the power of the creditor to apply the payment as he chooses (absent direction by the debtor) when the rights of third parties are affected. In our research we find two general grounds for this exception. One is based on a contractual obligation between the third party and the debtor that the debtor will apply specific funds received from the third party to the creditor in a certain manner. The other ground is based on general equitable considerations to protect, for example, innocent owners who pay in full from liens by materialmen.

"Templeton contends, because of the restrictive agreement quoted above, that Templeton directed that the materials be paid out of the proceeds of the payments received by Dallas from Templeton. Dallas, in signing the restrictive endorsement, did certify that he had paid for the materials that Templeton, in turn, was paying Dallas for. We note, however, that there was no agreement here that Dallas would apply the *very funds* received from Templeton to the materials that Dallas purchased for the project.

"Thus, whatever reliance Templeton places on Section 388 of the Restatement of Contracts (1932) is misplaced.[1] The section states:

"1. We express no comment on whether Indiana adopts this section."

"If the payor is under a duty to a third person to devote money paid by him to the discharge of a particular debt the payment must be so applied if the creditor knows, or has reason to know, of the payor's duty, in spite of the fact that the payor directs that the payment shall be applied to the discharge of another debt.

"The comment to this section states:

"... it is essential that the debtor shall be under a contract with the third person, not merely to pay a particular debt, but to devote to that debt the very money with which payment was made.

"As there was no obligation to use Templeton's payment to pay Klain, Templeton cannot rely on the contractual ground found in Section 388 and cannot rely on such case law as *General Plywood Corp. v. S. R. Brunn Construction Co.*, (1971) Mo. App., 511 S.W.2d 905.

"We turn, then, to the second ground which is the general equitable principle recognized in many states that where a contractor owes a materialman more than one debt for materials used in several constructions and the materialman knows that funds paid to him by the contractor were received by the contractor on account of one of those debts, the materialman cannot apply such funds to another debt to the prejudice of the paying owner. *Duffy v. Bourg*, (1968) La.App., 209 So.2d 502; *Ellingsen v. Western Farmers Ass'n*, (1974)

12 Wash.App. 423, 529 P.2d 1163; *Mutual Lumber Co. v. Gero,* (1968) Me., 244 A.2d 564 (if materialman had knowledge of the source and purpose of the payment.) *See also* 53 Am.Jur.2d, Mechanic's Lien. § 330.[2]

> "2. This is by no means an exhaustive list. The same general rule applies in surety payment bond cases. See *American Oil, supra,* and cases cited therein."

"An examination of Indiana cases suggests that Indiana places great weight on a countervailing consideration. In *Western & Southern Indemnity, supra,* the court quoted with approval the following excerpt from *Salt Lake City v. O'Conner,* (1926) 68 Utah 233, 242, 249 P. 810, 814:

> "In the public interest commercial transactions should not be fettered. The necessary complications of modern business should not be increased by avoidable additions. Money released into trade should be permitted to circulate freely, unburdened by hidden equities or liens. In transactions like the one under consideration, the surety has ample facilities for protecting itself. It may with propriety reserve and exercise a surveillance over the disbursement of the proceeds of contracts for the performance of which it is surety. Materialmen dealing with contractors cannot do so. They cannot, consistent with business proprieties, inquire into the sources of money paid them. When a surety, as in the case at bar, permits money on the contract to be paid the contractor unconditionally, which it must know he may use for general purposes, we see no sufficient reason for sustaining any claim or equity in behalf of the surety, in such money, after it has been paid to another in the due course of business. The risk of such a loss is one of the hazards which the surety, for a fixed consideration, assumes by its contract.

"Thus, claims of misapplication of funds have been rejected in Indiana. *Brigham v. Dewald Co.,* (1893) 7 Ind.App. 115, 34 N.E. 498; *Shea v. Peoples Coal & Cement Co.,* (1928) 93 Ind.App. 302, 161 N.E. 849; *see also Western & Southern Indemnity, supra; Clow Corp. v. Ross Township School Corp.,* (1979) Ind.App., 384 N.E.2d 1077, 1081.

"While we would not be disinclined to relax the general rule in Indiana to allow the third party exception where the lienholder has actual knowledge of the source and particular purpose of the funds, we note that Templeton does not make a strong case on the facts here.

"First, as we noted above, Dallas did not promise Templeton to apply the particular funds received by Dallas from Templeton to the materials purchased from Klain. Dallas merely certified that he had paid for the materials that Templeton was paying for with the checks. And without doubt Klain was not aware of any agreement to apply the funds in any particular manner.

"Second, the particular source of the funds paid to Klain by Dallas is far from clear and certainly Klain had no knowledge of the source of the funds. The checks received from Templeton were deposited by Dallas in its general account. Thus, Templeton monies were commingled with other funds. Templeton must make a stronger showing of the source of identity of the funds than he did. *See Lumber Supply, Inc. v. Hall,* (1968) Iowa, 158 N.W.2d 667. Also, the mere fact that Klain was no doubt aware that some of the funds he was receiving came from Templeton does not rise to such a level of knowledge that a court would be willing to hold the materialman responsible for applying the funds in a particular fashion. It is, after all, not the materialman's responsibility to police the contractor's own accounts. *See American Oil, supra,* at 538.

"We conclude, therefore, that there was no error in the trial court's finding that Dallas did not pay Klain in the amount of $7,674.86.

"The second issue for our review is whether the trial court erred in applying the 'delivery presumes use' rule where there was no evidence that there was a direct contractual relationship between Templeton and Klain or that Templeton himself diverted the materials from use on the site.

"Of course, a purported mechanic's lien is valid only if it meets all the statutory re-

quirements necessary to its creation, one of which is the actual use of the materials in the construction. *Stanray Corp. v. Horizon Construction, Inc.,* (1976) Ind.App., 342 N.E.2d 645; *Van Wells v. Stanray Corp.,* (1976) Ind.App., 341 N.E.2d 198. We must remember, however, that there has been a finding by the trial court on this requirement and we will not reverse unless the finding is clearly erroneous. Ind.Rules of Procedure. Appellate Rule 15(N). *Van Wells, supra.* Thus, we review the evidence in this regard without attempting to either reweigh that evidence or adjudge the credibility of witnesses. *Van Wells, supra.*

"We first note that, as the trial court found, there was direct evidence presented that some of the material was incorporated into the site. The trial court did also rely, however, on the 'delivery presumes use' rule. We quote *Van Wells, supra* at 341 N.E.2d 202 to explain the exception:

"Similar to the estoppel exception is the rule that materials actually delivered are presumed to have been used in the building. As stated by this court in *Kendall Lumber & Coal Co. v. Roman* (1950), 120 Ind.App. 368, 376, 91 N.E.2d 187, 190–191:

'In 36 Am.Jur. p. 168, § 275, it is stated: ' "While there are some cases to the effect that the use of the materials must be shown, the indirect implication of which seems to be that evidence of mere delivery is not sufficient to show their use, the cases which have directly passed upon the question are inclined to the view that delivery of materials at the place of use prima facie establishes the fact of their use, and places the burden of showing the contrary upon the owner of the building. Along this same line it is generally held sufficient to show that the materials were purchased for use in and were delivered at the building, and that some of the materials furnished, or that materials of that character were used in the building. Where it is proved that part of the materials delivered were actually used, the presumption of use of all the materials, arising from delivery is, of course, stronger."

'The burden is on the owner to show the materials were not used on the building. 36 Am.Jur. p. 166, § 272, n. 3.'

*See also* 39 A.L.R.2d 394, 427–428.

"We find no limitation such as Templeton suggests on the 'delivery presumes use' rule and therefore reject Templeton's argument.

"Templeton next complains because he was found personally liable under Ind.Code 32–8–3–9 which provides that upon receiving written notice that the lienholder intends to hold the owner responsible for the debt due that the owner is liable for the same but not to exceed the amount which may be due, and may thereafter become due, from the owner to the subcontractor. The trial court found that Templeton owed at least the $7,674.86 due to Dallas in the form of retainages and unpaid work.

"Templeton claims he presented uncontradicted evidence that he had setoffs and damages due to Dallas not completing the work. We agree with Klain that the trial court could have found the testimony of Templeton insufficient. Templeton produced no hard data on the setoffs or damages. *See Gemmer v. Anthony Wayne Bank,* (1979) Ind.App., 391 N.E.2d 1185, 1189.

"We will treat Templeton's claim of error in the awarding of attorney's fees in the same light. IC 32–8–3–14 provides for the awarding of attorney fees where the owner has not in fact paid in full. The trial court, again, found that Templeton had not paid in full. We will not reverse this factual determination.

"Templeton next presents the issue of whether it was proper for the trial court, on petition of Klain, to award attorney's fees for defending the judgment on appeal, and further, to place an additional lien on the property for that amount."

In *Willsey v. Hartman,* (1971) 150 Ind. App. 485, 487, 276 N.E.2d 577, 578–79, an appeal involving the foreclosure of a mechanic's lien, the Court stated:

"The appellee has made a persuasive plea in his brief for an additional attor-

ney's fee for his attorney's services in this appeal; however, he has petitioned neither this court nor the trial court for such an allowance, nor has he shown us any authority or standard to guide us. On the record as it stands, we cannot grant the additional relief suggested."

The gist of the foregoing statement is that upon a proper record, attorney's fees would have been approved for the appeal. This is a correct interpretation of the statute, Ind.Code § 32–8–3–14, which speaks of "reasonable attorneys fees." A reasonable fee for the prosecution of the claim and foreclosure of the lien alone would not be a reasonable fee for those services plus the defense of the judgment on appeal.[1]

 The trial court overruled Templeton's motion to correct errors on September 8, 1977, and he initiated appellate proceedings. Promptly thereafter, Klain petitioned the trial court for an allowance of attorney's fees for the appeal, which petition was granted subsequent to the filing of the record on appeal but prior to the filing of appellant briefs. This award was prematurely made. Although the filing of the petition was timely, it should have been held in abeyance until the appeal has been concluded. At that time, the trial court will be in a position to hear evidence and determine a proper fee. *Dunn v. Deitschel,* (1930) 204 Ind. 269, 272, 169 N.E. 529, 530. *See Fox v. Galvin,* (1978) Ind.App., 381 N.E.2d 103, 108 (Awarding attorneys fees in a mechanic's lien suit in light of all that is involved in the litigation).

The reasonableness of the fee will turn on the circumstances of the case. What may be reasonable when the case does not go beyond the pleading stage, e. g., *Byerly, d/b/a Byerly Constr. Co. v. Lusardi,* (1962) 133 Ind.App. 315, 317, 182 N.E.2d 4, 5, obviously will not be reasonable when the claimant is also required to defend his judgment on appeal, as in *Willsey, supra,* or to peti-

tion for or defend against transfer, as in the case at bar.

Although the action of the trial court in this regard was not in accord with the procedure above set forth, we, nevertheless affirm the judgment of the trial court in its entirety. At every stage of the lawsuit, Defendant has repeatedly asserted the lack of the trial court's power to award attorney's fees for an appeal under Ind. Code § 32–8–3–14 but has never challenged the reasonableness of the amount of the award. Having failed to raise that issue on appeal, which he had a right to do, Defendant is now foreclosed from litigating that issue and is bound by the amount of the award. *Drost v. Professional Building Service Corp.,* (1978) Ind.App., 375 N.E.2d 241, 244.

The order and opinion of the Court of Appeals are vacated, and the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

---

1. *See King Pin Motor Lodge, Inc. v. D. J. Construction Co., Inc.,* (1981) Ind.App., 416 N.E.2d 1317, 1319 (Attorney's fees may not be awarded to a mechanic seeking to enforce an invalid lien even though he may otherwise be entitled to damages for breach of contract.); *Froberg v. Northern Indiana Construction, Inc.,* (1981) Ind.App., 416 N.E.2d 451, 454 (same); *St. Joseph College v. Morrison, Inc.,* (1973) 158 Ind. App. 272, 277, 302 N.E.2d 865, 869 (same).