**RADIO DISTRIBUTING COMPANY, INC., Defendant-Appellant,**

v.

**The NATIONAL BANK AND TRUST COMPANY OF SOUTH BEND, Indiana, et al., Plaintiffs-Appellees.**

No. 3–1284A351.

Court of Appeals of Indiana, Third District.

March 5, 1986.

---

Jeffery A. Johnson, Robert J. Palmer, May, Oberfell, Helling & Lorber, South Bend, for defendant-appellant.

John B. Ford, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for plaintiffs-appellees.

GARRARD, Judge.

This lawsuit revolves around a piece of commercial real estate located in South Bend which the bank as trustee had leased to Radio Distributing, and an alleged breach of that lease by Radio Distributing. Radio Distributing answered that if it had breached the lease, the trustee had failed to act to mitigate its damages and made certain counterclaims that are immaterial to this appeal. The lease between the trustee and Radio Distributing contained a clause providing that Radio Distributing would pay the attorney's fees and expenses incurred by the trustee in enforcing the lease or remedying its breach.

At a pretrial conference in May of 1982, the parties were ordered to exchange lists of witnesses, their respective contentions, and proposed stipulations prior to September 10, 1982 so that a pretrial order could be entered on that date. Trial was set to commence September 23, 1982.

On November 15, 1982 the trial court reset the trial to January 14, 1983. On January 10, 1983 the trustee filed its list of witnesses, exhibits, and contentions. On December 1, 1983 trial of the case was reset for March 14, 1984.

The trustee requested another pretrial conference which was held on December 27, 1983. Apparently it was at this conference that Radio Distributing first filed its list of witnesses although it had been or-

dered to file these materials by September 10, 1982. The trustee was given until January 10, 1984 to amend its own list of witnesses, contentions, and exhibits. A pretrial order was to be filed by February 1, 1984.

The proposed pretrial order was finally submitted on March 13, 1984, the day before trial. It named as witnesses for Radio Distributing two persons, John Ayers and John Fischer, who had not been on the list filed in December, but also stated that the trustee objected to these additions. In a hearing held on the morning of trial, the judge ruled that neither of these witnesses would be permitted to testify.

The case was tried before the court on March 14 and 19, 1984. At the start of its case in chief, Radio Distributing attempted to call Fischer and Ayers, and the trustee renewed its objection, which the trial court sustained. Radio Distributing then made the following offers of proof:

"MR. JOHNSON: That if John Ayres [sic] were called to testify here today he would testify principally that in 1976, late 1976, early 1977, during the course of a conversation he had with Mr. Cleppe of The National Bank and Trust Company, Mr. Cleppe told him that Logan Industries could take possession of building 1212; that Logan Industries would not have to pay any rent for the use of building 1212; he gave as a reason for this the fact that there was probate litigation "pending and that The National Bank didn't know to whom the rental payment would be made, and as far as he was concerned they could take possession of the building. The National Bank's position would be that they weren't in possession, but as far as he was concerned they could take possession.

Further, the testimony would show that Mr. Ayres [sic] was an agent of Logan Industries, employed by Logan Industries, and was negotiating with Mr. Cleppe in his capacity as an agent of Logan Industries for the purpose of negotiating a lease and/or purchase of building 1212.

Further, that Logan Industries did take possession of building 1212 in late 1976, early 1977, the specific date of which he is not certain, and remained in possession of the building until such time as Logan Industries moved out in 1981 when they went out to their present location at the South Bend Industrial Park; that to his knowledge Logan Industries did not pay any rent for the use of building 1212 during this period of time. MR. JOHNSON: If John Fischer were allowed to testify here today in this matter he would testify as to the following facts:

He is an employee and agent of Logan Industries; that he was the founder of Logan Industries in 1955, and remained its Chairman until approximately 1972; that from his personal knowledge as an employee, and he has remained in the employment of Logan Industries through today, that if he were called to testify here today he would state that from his own personal knowledge Logan Industries was in possession of building 1212 beginning as early as the fall or early winter, 1976; that Logan Industries remained in possession of building 1212 until they moved to their present location at the South Bend Industrial Park in 1981; that during the period that they were in possession, to the best of his knowledge Logan Industries did not pay any rents for the use of that building.

Further, that Logan Industries was in possession of building 1212 with the knowledge and consent of The National Bank."

In Findings of Fact and Conclusions of Law dated August 23, 1984, the trial court found for the trustee on the trustee's claims for breach of lease and for attorney's fees and found against Radio Distributing on its defenses and counterclaims, including its defense that the trustee had failed to act reasonably to mitigate damages.

On October 22, 1984 Radio Distributing filed its motion to correct errors. Affidavits by both Ayers and Fischer were at-

tached to it. In his affidavit, Fischer stated that Logan Industries had offered to pay rent for the use of the premises and that the trustee had refused this offer.

The trial court denied Radio Distributing's motion to correct errors on December 7, 1984. On January 8, 1985 the trustee petitioned for an award of additional attorney's fees to cover expenses after trial. On February 28 the record of the case was filed in the clerk's office. On May 24 the trustee petitioned this court for attorney's fees to cover the expenses of appeal.

In its appeal Radio Distributing makes the following allegations:

1) That the trial court acted contrary to law or abused its discretion in refusing to allow Ayers and Fischer to testify.

2) That the trial court erred in refusing to allow the same witnesses to testify as "rebuttal" witnesses.

3) That certain of the trial court's findings of fact and conclusions of law were contrary to the evidence and constitute reversible error.

4) That attorney's fees claimed by the trustee for the costs of certain post-trial work performed by its lawyers in connection with this case are not proper subjects for an award.

*Preliminary Matters*

Before turning to the main contentions of the parties, we should consider the effect of the affidavits attached to Radio Distributing's motion to correct errors. In its reply brief, Radio Distributing claims that under Indiana Rules of Procedure, Trial Rule 59(H), we must accept all the allegations in the affidavits as true since no affidavits were filed by the trustee. It should be noted that Fischer's affidavit differs materially from the offer of proof made at trial, in that it alleges that the trustee was offered and refused rent from Logan Industries.

■ Trial Rule 59(H) applies to motions to correct errors based on facts outside the record. Examples of motions based on facts outside the record include motions based on newly discovered evidence, accident or surprise which could not have been guarded against. 4 Harvey and Townsend, *Indiana Practice* 131. An affidavit under this rule may not be used to bring forth evidence that a party merely neglected to submit during the trial. *Mid-States Aircraft Engines v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242.

In this case there is no contention that the evidence of Fischer and Ayers was not available at trial. The error, if any, resulted when the trial court excluded the testimony of the two witnesses. The details of their testimony go only to the magnitude of the error. TR 59(H) and the cases under it are therefore inapplicable.

I.

Did the trial court act contrary to law or abuse its discretion in excluding the testimony of Fischer and Ayers? The following recapitulates the sequence of events:

| | |
|---|---|
| June 21, 1979 | Complaint filed |
| October 25, 1979 | Answer and counterclaim filed |
| May 28, 1982 | Court conducts pretrial conference and orders exchange of witness lists, statements of contentions and proposed stipulations so that a comprehensive order can be entered September 10, 1982. Trial set to commence September 23. |
| November 15, 1982 | Trial reset for January 14, 1983 |
| January 10, 1983 | Trustee files list of witnesses, exhibits and contentions with court. |
| January ? | Trial continued (no docket entry in transcript) |
| November 29, 1983 | Trustee requests additional pretrial conference; conference set for December 27. |
| December 1, 1983 | Trial set to commence March 14, 1984. |
| December 27, 1983 | Pretrial conference. Radio Distributing files list of witnesses, etc. Trustee given until January 10, 1984 to supplement its list of witnesses, contentions. Fully executed pretrial order to be filed by February 1, 1984. |

| | |
|---|---|
| March 13, 1984 | Proposed pretrial order submitted naming Fischer and Ayers as witnesses and stating trustee's objections to their appearing. |
| March 14, 1984 | Trial commences |

In order to place the court's action in the proper context we commence by briefly reviewing the pertinent aspects of Trial Rule 16.

The rule contemplates the entry of a comprehensive order stating the issues to be tried, the contentions of the parties respecting the issues, stipulations of fact, lists of witnesses, identification of and stipulations concerning the admissibility of exhibits, and such other matters as the parties and the court may agree to concerning conduct of the trial and disposition of the action. Once the comprehensive order is entered it controls the subsequent course of action unless modified to prevent manifest injustice. TR 16(J).

At the same time the rule recognizes that in some instances it may be necessary or desirable to conduct more than one pretrial conference or to adjourn a pretrial conference from time to time. TR 16(H).[1]

An order entered as a result of such a "partial" or "preliminary" pretrial conference may properly be referred to as a pretrial order. *Compare* FRCP 16(e) which states:

"After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice."

This version of the federal rule accurately states the Indiana law applicable to the situation where the court has exercised its authority to conduct a series of pretrial conferences or has elected to continue a conference from date to date. We say this because on the one hand any order entered by the court after conducting a pretrial conference is enforceable against the parties as a necessary part of the inherent power of the court to implement and enforce the effective conduct of proceedings held pursuant to the pretrial rules. *Ginns v. Towle* (2d Cir.1966), 361 F.2d 798; 62 Am.Jur.2d, *Pretrial Conf.* Section 31. On the other hand, the limitation on modifying orders "only to prevent manifest injustice" should not apply since by its very nature the partial order contemplates some kind of modification and amendment to arrive at the comprehensive order envisioned by the rule.

The general rule is that questions concerning the trial court permitting or denying a modification of a pretrial order are reviewable only for an abuse of discretion. *Colonial Mortgage Co. of Indiana, Inc. v. Windmiller* (1978), 176 Ind.App. 535, 376 N.E.2d 529. This applies to orders concerning additional witnesses. *Johnston v. Brown* (1984), Ind.App., 468 N.E.2d 597. In considering whether to permit an amendment the trial court considers the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. C. Wright & A. Miller, *Federal Practice and Procedure*, Section 1527 at 611. Additional considerations include the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or wilfulness in failing to comply with the court's existing order. *Meyers v. Pennypack Woods Home Ownership Ass'n.* (3d Cir.1977), 559 F.2d 894, 904–05.

■ Radio Distributing first argues that because the trustee was also delinquent in complying with the court's original order, any objection to its late presentation of Fischer and Ayers as witnesses should be

---

1. Indeed the 1983 amendments to the federal rules, FRCP 16, expressly recognize the desirability in many cases of holding a series of conferences so that the court may better expedite and control the litigation. Thus, the federal rule now expressly refers to a "final" conference but acknowledges that the order entered after any conference is, in proper contemplation, a "pretrial order."

deemed waived. In support of this contention it cites *State v. Dwenger* (1976), 168 Ind.App. 90, 341 N.E.2d 776 and *Fruehauf Trailer Div. v. Thornton* (1977), 174 Ind. App. 1, 366 N.E.2d 21. In each of these cases the court permitted a party to call as a witness someone not listed in the pretrial order and in each, both parties had been dilatory in seeing to the preparation and entry of the pretrial order. In each case the appellate court held that under the circumstances there was no abuse of discretion in permitting the witnesses to testify. We have no quarrel with those rulings.

The flaw in Radio Distributing's argument is that these cases simply are not authority for the proposition that it would be an abuse of discretion to exclude the witnesses. That is, after all, what the principle of discretion is about, viz. situations where there is no "official" right answer and the court is afforded latitude for reasonable action. In applying an abuse of discretion standard of review, we examine only whether the action taken by the court was clearly against the logic and effect of the circumstances. *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288. Thus, regarding *Dwenger* and *Thornton* the question we face is not whether the court might reasonably have permitted Fischer and Ayers to testify, but whether it might reasonably have excluded them.

In addressing the latter question Radio Distributing urges that we match the circumstances presented here against the four part "test" enunciated in *Meyers, supra*. It argues that since diligence of the parties is not an enumerated factor under that test, the court could not properly consider it. We believe that this approach represents a fundamental misunderstanding of the nature of "tests" like these in the law. Such tests are enunciated to disclose various factors which may be pertinent to the determination which is to be made. They are intended as a guide for the court's reasoning, and not, as parties so

often attempt to use them, as a straight jacket on a court's analytic processes.

Here the action had been pending for nearly five years, and eighteen months had passed since the date upon which Radio Distributing had been first ordered to present its list of witnesses.

The two witnesses, Fischer and Ayers, were proposed instead of two other witnesses employed by Logan Industries who had been named by Radio Distributing when it finally filed its witness list on December 27, 1983. There was no showing of any attempt to subpoena the witnesses originally named or of why they were unavailable to testify at trial. Significantly, although the court asked counsel several times whether Fischer and Ayers would testify to the same things as the previously named witnesses, counsel would only represent that their testimony would concern the same subject matter.

The facts of counsel's considerable dilatariness in disclosing witnesses and attending to the pretrial agenda,[2] the disclosure of the names of the proposed witnesses on the very eve of trial, and the reasonable inference that these were not merely perfunctory witnesses whose evidence was easily available from any of Larson's employees, support further inferences that the trustee would be prejudiced by permitting them to be called or in the alternative that the trial would again be delayed by continuance and that the delay in naming them was not reasonably excusable.

Of course, these conclusions are to be balanced against the goal of doing justice to the merits of the case. We believe, however, that the trial court's deference to that goal is to be judged by examining more than merely the impact of the ultimate ruling complained of.

Trial Rule 16(K) provides:

"If without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on

---

2. We do not imply that counsel acted in bad faith or was solely responsible for the delay in bringing the case to trial. It is sufficient that he was responsible for unexcused and extensive delay.

behalf of a party at a pre-trial conference, or if an attorney is grossly unprepared to participate in the conference, the court may order either one or both of the following:

(1) the payment by the delinquent attorney or party of the reasonable expenses, including attorney's fees, to the aggrieved party; or

(2) take such other action as may be appropriate."

Thus, where an attorney is grossly unprepared to participate in the conference (which may result from the failure to conduct a proper conference of attorneys pursuant to TR 16(C) and (D)) the court may impose appropriate sanctions.

We are aware that many of our trial courts are averse to imposing sanctions at least for early defaults in being fully prepared for the pretrial. Indeed it appears to be a matter of local practice in a number of courts to do much as the trial court did here. Instead of imposing sanctions they will order witness lists, identification of exhibits, statements of contentions and the like and set another date for either another conference or for submission of the proposed pretrial order. It is not necessary that we express approval or disapproval of the practice. It is within the trial judge's discretion. When, however, such extensions and reschedulings have been granted, a necessary effect is that the court has accorded respect to the goal of doing justice on the merits since the unprepared party is given additional opportunity to correct the deficiencies. We do not mean that in all such cases doing justice on the merits ceases to become a consideration, for it does not. We do mean that it is less compelling where repeated opportunity has been afforded to meet the requirements of TR 16 and without excuse or justification a party fails to fulfill his obligations.

Under the circumstances presented here we can find no abuse of discretion in the court's determination to exclude Fischer and Ayers as witnesses for Radio Distributing during its case-in-chief.

## II.

It argues, however, that even upon this determination the trial court should be held in error for not allowing Fischer and Ayers to testify as rebuttal witnesses. It points out that rebuttal witnesses often cannot be named in the pretrial order since the need for their evidence cannot be properly anticipated in advance of trial.

We agree that where the relevance and existence of rebuttal evidence is not known until the other side has presented its case, a trial court does not commit an abuse of discretion by permitting the rebuttal although the witness was not listed prior to trial. *See Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149, 1154. The general rule, of course, is that matters of rebuttal and order of proof are within the court's discretion. *State Farm Mut. Auto Ins. Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941. Moreover, rebuttal evidence is that which tends to explain, contradict or disprove the evidence offered by the adverse party. *Coffman v. Austgen's Elec., Inc.* (1982), Ind.App., 437 N.E.2d 1003. Thus, a trial court will not commit an abuse of discretion by excluding in rebuttal evidence which could or should have been offered as part of the proponent's case-in-chief. *Coffman, supra; Smith v. Metz* (1958), 129 Ind.App. 64, 153 N.E.2d 919.

Here Radio Distributing has made no showing that the witnesses were offered in rebuttal to unanticipated matters arising from the presentation of the trustee's case. Indeed, the reasonable inference is to the contrary. The offers of proof indicate the witnesses were being called essentially to testify concerning the lack of rental payments made by Logan Industries. This was pertinent to Radio Distributing's affirmative defense of failure to mitigate damages and a part of its case-in-chief.

We find no abuse of discretion in the rejection of them as rebuttal witnesses.

## III.

Do alleged shortcomings in findings of fact 33 and 34 and conclusion of law 6 amount to reversible error?

Radio Distributing claims that findings 33 and 34 are both inconsistent and contrary to the evidence and that conclusion of law 6 is contrary to law and clearly erroneous.

These findings and conclusions are that:

"33. Any use of the property at 1212 High Street by the Council for the Retarded was for the purpose of preserving the property by being able to maintain property and casualty insurance thereon, and in no way affected the efforts of the Trustee to find a subtenant or purchaser.

34. Any use of the property at 1212 High Street by the Council for the Retarded prior to 1978 was without the knowledge and consent of the Trustee.

6. The Trustee exercised commercially reasonable efforts to relet the premises."

Assuming Radio Distributing is at least partially correct, and the trustee had knowledge that Logan Industries was using the building in question, given that Radio Distributing failed to show that the trustee refused to accept rent from Logan Industries, its charge that reversal is necessary is not sound. The other findings of fact amply support the conclusion that the trustee properly acted to mitigate damages, and are in turn supported by evidence in the record.

■ The burden of proof was on the lessee, Radio Distributing, to establish that the trustee had not acted to mitigate damages. Since it is appealing from a negative judgment on a factual issue, the burden is on Radio Distributing to show that the evidence points without question to a conclusion opposite that drawn by the trial court. *Grueninger Travel Service of Fort Wayne, Indiana, Inc. v. Lake Co. Trust Co.* (1980), Ind.App., 413 N.E.2d 1034. Many unchallenged findings of fact support the conclusion that the trustee acted reasonably to mitigate damages. The mere fact that in order to make certain that the

property remained insured, it allowed Logan Industries to use the premises without paying rent does not mean that it acted unreasonably.

If Radio Distributing had proved that the trustee refused to accept rent, or that allowing Logan Industries to occupy the site prevented it from being re-rented, a different result might have been reached. However, we cannot say that under the facts presented, the decision of the trial court was incorrect as a matter of law.

## IV.

When the trustee filed its appellee's brief it also petitioned for an award of attorney's fees for defending on appeal.[3] Radio Distributing contests both the availability of such an award and the amount claimed.

Where a promissory note or other contract contain a provision for attorney's fees, the traditional view denied the ability of the court to award additional fees where a party was called upon to defend its judgment on an appeal. The reason for denial was that the provision authorizing the award of attorney's fees was deemed to have been merged into the judgment. Thus, the contractual authorization no longer existed. *See, e.g., McCormick v. Falls City Bank* (7th Cir.1892), 57 Fed. 107.

■ The more modern view recognizes on the basis of equity and what the parties intended by their agreement (indemnification of the injured party), that such attorney fee provisions should be treated as an exception to the general principle of merger. In *Templeton v. Sam Klain & Sons, Inc.* (1981), Ind., 425 N.E.2d 89 our Supreme Court held that the authorization to award attorney fees contained in the mechanic's lien statutes permitted the award of fees on appeal. Determining that this implicitly adopted the modern view, the Fourth District held in *Parrish v. Terre*

---

3. We note that the trustee did file a petition for additional fees with the trial court. Record at 158. The trial court properly held the petition in abeyance. *Templeton v. Sam Klain & Son,*

*Inc.* (1981), Ind., 425 N.E.2d 89 at 95. *See also Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 723.

*Haute Savings Bank* (1982), Ind.App., 438 N.E.2d 1 (Conover, J. dissenting) that a contractual provision for attorney fees contained in a promissory note authorized an award of attorney fees for defending the judgment on appeal.

We agree that this is the better rule, and find that the trustee is entitled to recover reasonable attorney's fees in defending the appeal. *See also Management Services Corp. v. Development Associates* (Utah 1980), 617 P.2d 406; *Smith v. Brovan* (1979), 97 Cal.App.3d 19, 158 Cal.Rptr. 515.

As the Supreme Court pointed out in *Templeton* the preferred procedure is for the trial court to hear the evidence and determine a reasonable fee when the appeal has been concluded. At that time Radio Distributing may properly present its position concerning what constitutes a reasonable fee.

We, accordingly, affirm the judgment and remand the case for hearing on appellate attorney's fees.

STATON, P.J., concurs.

HOFFMAN, J., concurs in part and dissents in part and files separate opinion.

HOFFMAN, Judge, concurring and dissenting.

I concur in the majority's opinion except the portion allowing appellate attorney's fees based upon a contractual provision allowing attorney's fees. The majority relies upon the Supreme Court opinion in *Templeton v. Sam Klain & Son, Inc.* (1981), Ind., 425 N.E.2d 89 wherein a statutory provision allowing "reasonable attorneys fees" supported an award of appellate attorney's fees. The decision to extend a legislatively sanctioned award of attorney's fees to contract cases is not within the province of the intermediate appellate court.

This Court in *Honey Creek Corp. et al. v. WNC Develp. Co. et al.* (1975), 165 Ind. App. 141, 152-153, 331 N.E.2d 452, 460 determined that a claim for attorney's fees on appeal, pursuant to a contract provision, was merged into an award of attorney's

fees obtained in the judgment at the trial court. Thus, the contract provision would not support successive attempts to collect attorney's fees.