## W. R. MILLER ET AL. v. JOHN F. RIVERS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1890—Decided November 10, 1890.

Evidence that a deed, under which a defendant in ejectment claimed, was
executed by the grantor, when in a weak mental condition, to the de-
fendant, his stepson, for a nominal consideration; that it was prepared
by the grantee's attorney, and acknowledged in the presence of the
grantee before a notary to whom the grantor was unknown, was pro-
perly for the jury, with the burden upon the defendant to establish that
the grantor understood the nature of the act and executed the deed of
his own free will.

Before Paxson, C. J., Sterrett, Green, Williams, Mc-
Collum and Mitchell, JJ.

No. 13 October Term 1890, Sup. Ct.; court below, No. 604
July Term 1887, C. P. No. 2.

On June 26, 1888, William R. Miller, George F. Miller and
others, brought ejectment against John F. Rivers, for a house
and lot in the Seventeenth ward.    Issue.

At the trial on November 14, 1889, it was shown that the
plaintiffs were the children and heirs at law of John A. Mil-
ler, who died intestate on January 14, 1888; that the title to
the property in dispute had been conveyed to John A. Miller
and Mary Miller, his wife, by the deed of the executors of Wil-
liam Werneberg on January 5, 1867; that Mary Miller died on
June 26, 1886, leaving to survive her her husband John A.
Miller, the plaintiffs who were their children, and the defend-
ant, a son by a former husband; that at the time of her death,
Mrs. Miller was the owner of real estate in the Twelfth ward,
and that she left a will dated August 14, 1883, admitted to
probate May 24, 1888, appointing her son, George F. Miller,
her sole executor, and devising to her husband one third of her
personal estate absolutely and one third of the rents of her real
estate during life.

The defendant claimed the property in dispute under a deed

to him executed by John A. Miller, as John J. Miller, and acknowledged on April 2, 1887, for the consideration of one dollar.    The deed was recorded, and registered in the city engineer's office, on the day of its execution.    To affect the validity of this deed, there was evidence adduced tending to show that the grantor, for many years before his death, was of intemperate habits, physically and mentally weak, and incompetent to make a conveyance.    The defendant adduced evidence in rebuttal of these allegations.

At the close of the testimony, the court, Ewing, P. J., charged the jury in part as follows:

The defendant's counsel respectfully request the court to charge the jury as follows:

1. That there is no evidence in this case that the deed of John A. Miller to John F. Rivers was procured by fraud, and the verdict must be for the defendant.

Answer: Refused.[6]

2. There is no evidence in this case that the deed of John A. Miller to John F. Rivers was procured by fraud, or was the result of accident or mistake, and the verdict must be for the defendant.

Answer: Refused.[7]

3. That under all the evidence the verdict must be for the defendant.

Answer: Refused.[8]

[Before we leave the will, a singular circumstance may or may not have bearing on this case.    Although Mrs. Miller died in June, 1886, her will was not probated, nor could any executor act as such therefor, until in May, 1888, some four months after the old man died.    Incidentally it appears that Fred Rivers had been collecting rents up to that time, or near it, and that the executor, one of the Millers, demanded settlement from him and obtained a settlement probably in May, and then also demanded a settlement of the rent of this house that is in dispute, when for the first time, so far as it appears from the evidence, was it that any of the children of John A. Miller, or anybody else except Fred Rivers, the scrivener, Mr. Hunter and the notary, Mr. Lyon, knew that John A. Miller had ever made a deed to Rivers for this property.    Soon after the time

Charge of Court below.

it was made it was left for record and recorded in the recorder's office. Mr. Miller remained in the house, living with his married daughter and her husband and a son, whom I take to be unmarried, or they were living with him, from the time this deed was made until the time of his death; and, if the testimony is to be believed, after his death these children of John A. Miller remained in possession, and Mr. Rivers, without making known, or suggesting, or hinting that he had any right there, by what can only be called a trick got possession of this property. The others say, and say unequivocally and absolutely, that he agreed to pay them rent, and asked to get into it. He admits that he agreed to pay rent up to the first of April, and admits that they talked about the amount of the rent, that it would be $22 or $23 a month, and admits that he went in under circumstances that left them to believe that he was going in as a tenant. The question is not raised here in the pleadings that he was a tenant and cannot defend. If it was, probably the case would be decided on different grounds, but it would simply involve another suit, and plaintiffs are wise in not raising that technical question. A man cannot lease land from another, become his tenant, and then turn around and claim it against him and say he owns it; he has to go out before he makes a hostile claim; and so would this defendant, if that question was raised. The conduct of the defendant, I think, has some bearing in this case.] [3]

Now, in regard to the condition of this old man. The testimony is unusually conflicting, but we generally find that it is more or less so, in a case of this sort, unless a man is a raving maniac. You will usually find people come on the stand willing to testify that he is mentally sound, and if we are in a contest where a man, especially an old man, is at all childish in any way, you will find people who think that he is not competent to transact business, although he may be entirely competent. People take different views of it, and it is not necessary to assume that they are dishonest in their testimony. There is more than the usual discrepancy, I think, in this case. The witnesses for the plaintiffs, a considerable number of them, say in a general way, giving the substance of their testimony, that he had been weak minded for many years; that he had been gradually getting worse, and that the latter years of his life

Charge of Court below.

he was childish; that he was incoherent; that he apparently did not understand what he was doing in any matter of business, nor could he recall any item of business for a considerable length of time; that he was peculiar; that he was feeble and tottering and had a vacant stare—a great many such things, and they give very decided opinions that he was entirely incompetent to transact business.   And the witnesses, on the other hand, and about an equal number of them, called for the defendant, say that they noticed nothing wrong, and all but one, I think, say that he was weak physically, but mentally they thought he was all right, and they had not discovered any incoherence or anything different from any ordinary man of his age.   It becomes a matter of considerable importance for you to determine what his condition was; because, if this man was a man in the vigor of life, accustomed to transact business daily, understanding what he was doing, there would not be any question in this case. . . . .

[So, it becomes a matter of importance for you to determine what the relations of Fred Rivers were to this old man.   If he was a stranger and dealing at arms-length, not a confidential adviser in any way or engaged in business for him, or had not been, then he stands in a different position.   But if he was a confidential adviser, a special friend, and had been attending to his business, then he occupied a different relation, a confidential relation.] [4]

[Now in regard to the preparation of this deed.   The testimony shows that it was written by Mr. Hunter, who is a clerk in the office of the clerk of courts, and is also a member of the Bar.   It was written on the 28th of March at the instance and request of Mr. Rivers.   So far as appears, Mr. Hunter never saw or knew Mr. Miller.   The next thing that we see and hear of this deed, is on the second of April when Mr. Rivers, with it in his possession and in company with this old man, comes to the office of Mr. Lyon, who is a notary public down on Fourth Avenue, a man who did not know Mr. Miller but who knew Mr. Rivers and Mr. Rivers knew him.   Mr. Miller was brought in and the deed produced by Mr. Rivers, and according to the testimony of Mr. Lyon, Mr. Rivers said they came to acknowledge a deed.   Mr. Lyon says he took the deed and asked the old man if he understood it, and the old man did not appear to know what

he meant; he then read the principal parts of it, a description of the property and the consideration; he says he explained it to him, but when asked how he explained it, he replied " by reading it to him; " he then asked the old man if he understood it, and he signed his name, not John A. Miller but John J. Miller. The deed was delivered and they went away. That is all Mr. Lyon knows about it. Now, I have not any doubt of Mr. Lyon's integrity. I think, no doubt from his appearance on the stand, he is an entirely honest man; I believe him to be so, but I do think that the magistrate who will take an acknowledgment from a man in that condition, coming in that way, a deed of gift produced by the grantee, with the grantee remaining there in his presence all the time, entirely fails to comprehend the responsibility of his situation; and if this was a fair and honest transaction, it was an exceedingly stupid thing for the parties to do. If Mr. Miller wanted to give this property to Fred Rivers, which he had a right to do if he was competent, it would have been wiser, to have avoided suspicion, for Mr. Rivers to get him to get some disinterested man who knew him, or have some such person go to him and let the old man tell what he wanted, and let that person have it done. As I have said, I do think that when a notary or magistrate takes an acknowledgment from a man in the condition in which Mr. Lyon says this man was,—hard of hearing, at first did not seem to understand what he was to do when asked if he understood the deed, and then had him remain in the presence of the man who produced the deed, without any attempt to explain further than by reading to him, he failed to perform his full duty, however honest he was.] [5] Nevertheless, if this man was entirely competent,—if it was one of you who went through the same thing, it would be good. If, however, all these circumstances that I have stated in answer to the point of defendant, and have endeavored to bring before you more fully now, that are alleged as to the relations between the defendant and this old man are true, and if you find that, though feeble and weak, he was competent, if the matter was fully and completely explained to him, of understanding what he was doing and of making his deed, still it throws on Rivers the burden of showing that the old man did understand what he was doing and that no trick was played upon him.

Opinion of the Court.

[Of course if you find that this old man was entirely incompetent to transact business, your verdict should be for the plaintiffs. But, even if he was not, but was in a weak mental condition, and Fred Rivers occupied the confidential relation to him that is alleged, and he procured that deed to be written by his attorney and kept it in his possession, and went with, or took this old man to the notary that he himself knew and that the old man did not, and who did not know the old man, and there in his presence it was acknowledged and delivered without him, Rivers, being absent, it throws on the defendant the burden of satisfying you that the old man understood it and did it with his own free will. And as you find the facts, so you will find your verdict.] [4] . . . . .

The jury returned a verdict in favor of the plaintiffs. Judgment having been entered, the defendant took this appeal, assigning for error:

3–5. The parts of the charge embraced in [ ] [3 to 5]

6–8. The answers to the defendant's points. [6 to 8]

*Mr. W. W. Thompson* (with him *Mr. George C. Wilson*), for the appellant.

Counsel cited: Rowand v. Finney, 96 Pa. 198; Phillips v. Meily, 106 Pa. 544; Nicolls v. McDonald, 101 Pa. 514; Sylvius v. Kosek, 117 Pa. 76; Murray v. Railroad Co., 103 Pa. 44; Delamater's Est., 1 Wh. 374; Graham v. Pancoast, 30 Pa. 89; Nace v. Boyer, 30 Pa. 99; Irwin v. Shoemaker, 8 W. & S. 76; Bierer's App., 92 Pa. 267; English's App., 119 Pa. 541; Zentmyer v. Mittower, 5 Pa. 410; Cummins v. Hurlbutt, 92 Pa. 168; Hoopes v. Beale, 90 Pa. 84; Morton v. Weaver, 99 Pa. 52.

*Mr. C. W. Robb* and *Mr. John S. Ferguson*, for the appellees, were not heard.

The brief filed cited: Martin v. Martin, 1 Heisk. 644; Blume v. Hartman, 115 Pa. 32; Breed v. Pratt, 18 Pick. 115; Adair v. Adair, 30 Ga. 102; Wartemburg v. Spiegel, 31 Mich. 400; Bigelow on Fraud, 281; Wiest v. Garman, 4 Houst. 139.

PER CURIAM:

Judgment affirmed.