Ashmead *et al. v.* Reynolds *et al.*

Filed March 8, 1893.

---

No. 16,666.

ASHMEAD ET AL. *v.* REYNOLDS ET AL.

FRAUDULENT CONVEYANCE.—*Action to Set Aside.—Sufficiency of Complaint.—Undue Influence.*—In an action to set aside a fraudulent conveyance of land, the complaint is sufficient which alleges, in substance, the great age and feebleness of intellect of the grantor, the persistent and long-continued importunities of the grantee, the gross inadequacy or want of consideration, the relation of the parties, the nature of the transaction, and the circumstances surrounding the same, together with the allegation of undue influence and other allegations indicating fraud.

ASSIGNMENT OF ERRORS.—*Overruling Demurrer to Complaint.—When Assignment of Error Amounts to Admission of Truthfulness.*—Where an assignment of error is that the court erred in its conclusions of law on the facts found, and the facts found are substantially the same as alleged in the complaint, to which the appellant had demurred in the court below, and the overruling of which demurrer he assigns as error, the facts found are admitted to be true by virtue of the assignment of error on the overruling of the demurrer.

SAME.—*How Question May be Saved for Review on Appeal.*—Before an alleged error can be brought before this court for review, it must, in general, be brought to the attention of the trial court, so that, if the error in fact exists, it may be corrected in that court.

SPECIAL FINDINGS.—*When not Contrary to Law.*—Where the findings of the court are within the issues presented by the pleadings, and are supported by the evidence, they can not be contrary to law.

From the Gibson Circuit Court.

*M. W. Fields, J. W. Ewing, C. A. Buskirk* and *J. W. Brady*, for appellants.

*A. P. Twineham, W. D. Robinson* and *L. C. Embree*, for appellees.

Howard, J.—This was an action by appellees against appellants, to set aside deeds and for partition of lands. It is here on appeal for the second time. *Ashmead* v. *Reynolds*, 127 Ind. 441. On the former trial there was a judgment for appellees, which was reversed on the appeal, for the reason that the original complaint did not allege a sufficient disaffirmance of the deeds.

On the return of the case for a re-trial, an amended complaint was filed in two paragraphs. The cause was tried by the court, and, at the request of appellants, the court found the facts specially, finding for appellees under the first paragraph of the complaint.

The appellants assign as errors, the overruling of the demurrer to the first paragraph of the complaint, the conclusions of law on the facts found, and the overruling of the motion for a new trial.

The first paragraph of the complaint alleges, that on the 28th day of May, 1888, Joseph H. Reynolds was the owner of the land described in the complaint; that, on said day and for more than six months prior thereto, the said Joseph H. Reynolds was more than eighty years old, sick and greatly enfeebled both in body and mind, and by reason thereof easily susceptible to the influence, arts, and persuasions of others, and during said period of time the appellant Joseph R. Ashmead, who was the nephew of said Reynolds, well knowing his weak and enfeebled condition, as aforesaid, and corruptly contriving and intending to profit thereby, and to defraud the said Reynolds out of said farm, made frequent visits to him, and by means of continuous, persistent, and undue

Ashmead *et al. v.* Reynolds *et al.*

persuasion and importunity, and undue, corrupt, and overpowering influence exercised by the said Ashmead over and upon the said Reynolds, so wrought upon the mind and inclinations of said Reynolds that on said day the said Ashmead procured from said Reynolds an agreement in writing whereby said Reynolds agreed and undertook—without any consideration therefor whatever at the time paid or given by the said Ashmead, and without the said Ashmead having promised or agreed to return or pay any reasonable or adequate consideration therefor—to convey to said Ashmead the lands and farm aforesaid; and pursuant to said agreement, and by the means aforesaid, said Ashmead on said day procured from said Reynolds, in consummation of said agreement, certain deeds of conveyance, which were then executed by said Reynolds to said Ashmead, and which purported to convey in fee simple said lands to said Ashmead; nor has said Ashmead ever paid or given any consideration for said deeds whatever; that at the time of the execution of the agreement and conveyances the lands were of the value of $9,000; that neither said agreement nor said deeds were the act or deed of said Reynolds, but were procured by said Ashmead through the corrupt, fraudulent and dishonest practices and means aforesaid, by which the will and intent of said Reynolds were by the said Ashmead wholly overpowered and controlled; that at said time said Reynolds had many relatives who were nearer of kin to him than the said Ashmead, and were the proper subjects of his bounty, which relatives and their descendants are the appellees; that afterwards, on the 18th day of August, 1888, the said Reynolds departed this life intestate, leaving as his sole heirs the appellees, and said appellant; that after his death, and prior to the commencement of this action, appellees disaffirmed said deeds and agreement, and notified said Ash-

mead that the same had been procured by fraud and the undue practices and influences aforesaid, and that they refused to be bound by the same, whereupon said Ashmead declared that he was the exclusive owner of said lands by virtue of said deeds; that he had it solid and proposed to hold the same; setting out also the respective ownerships of the parties to said lands, and praying the cancellation of said deeds and for partition.

The court below held this complaint sufficient. Appellants contend that it is not, claiming that the facts constituting undue influence and fraud are not sufficiently stated. The allegations in this respect are that Reynolds was greatly enfeebled in mind and body, and over eighty years of age when he made the deeds, and that he died between two and three months thereafter. That his feeble condition of mind and body had existed for six months before the time of making the deeds, rendering him easily influenced by others, and that during this period Ashmead, who was the nephew of Reynolds, well knowing his weak and enfeebled condition, corruptly contriving and intending to profit thereby, and to defraud Reynolds of his said farm, made frequent visits to him, and by means of continuous, persistent, and undue persuasion and importunity, and undue overpowering influence, so wrought upon the mind of Reynolds as to persuade him to deed, without consideration, his farm then worth $9,000; that said deeds were not the act or deed of Reynolds, but of Ashmead, by whom the will and intent of Reynolds were wholly overpowered and controlled.

In *Wray* v. *Wray*, 32 Ind. 126, the following is quoted and approved: "Where a party is weak and enfeebled in mind by reason of age, or from any other cause, and another takes advantage of such weakness, and by any artifice, or cunning, or undue influence he may possess,

or by any improper practices, induces such person to execute a contract which in the free use and exercise of his deliberate judgment he would not have entered into, such a contract would be set aside for fraud."

In 8 Am. & Eng. Encyc. of Law, 649, undue influence is defined to be "Any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered, and he is induced to do or forbear an act which he would not do, or would do, if left to act freely. It generally occurs where one of the parties is weak in intellect or so situated or related to the other as to be peculiarly under his influence. 'It matters not what the relation is, if confidence is reposed and influence obtained.'" And the same authority, in a note, adds: "Where one of the parties is very old and feeble, illiterate, weak-minded, or intoxicated, very slight additional circumstances of suspicion will cast the burden on the other party."

In *Allore* v. *Jewell*, 94 U. S. 506, a case similar to this, Mr. Justice Field, speaking for the court, said: "It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances, imposition or undue influence will be inferred.

"In the case of *Harding* v. *Wheaton*, reported in the 2d of Mason, a conveyance executed by one to his son-in-law, for a nominal consideration, and upon a verbal arrangement that it should be considered as a trust for the maintenance of the grantor, and after his death for the benefit of his heirs, was, after his death, set aside,

except as security for actual advances and charges, upon application of his heirs, on the ground that it was obtained from him when his mind was enfeebled by age and other causes. 'Extreme weakness,' said Mr. Justice STORY, in deciding the case, 'will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and though a contract, in the ordinary course of things, reasonably made with such a person, might be admitted to stand, yet if it should appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it can not be that the law is so much at variance with common sense as to uphold it.' The case subsequently came befor this court; and, in deciding it, Mr. Chief Justice MARSHALL, speaking of this, and, it would seem, of other deeds executed by the deceased, said: 'If these deeds were obtained by the exercise of undue influence over a man whose mind had ceased to be the safe guide of his actions, it is against conscience for him who has obtained them to derive any advantage from them. It is the peculiar province of a court of conscience to set them aside. That a court of equity will interpose in such a case is amongst its best-settled principles.' *Harding* v. *Handy*, 11 Wheat. 125.

"The same doctrine is announced in adjudged cases, almost without number; and it may be stated as settled law, that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and reasonable application of the injured party or his representatives or heirs, interfere and set the conveyance aside." See, also, *Spargur* v. *Hall*, 62 Iowa,

498; *Davis* v. *Dean*, 66 Wis. 100; *Wartemberg* v. *Spiegel*, 31 Mich. 400; *Birdsong* v. *Birdsong*, 2 Head (Tenn.), 289; *Samuel* v. *Marshall*, 3 Leigh (Va.), 567; *Ikerd* v. *Beavers*, 106 Ind. 483.

In the case before us, the maker of the conveyances, as alleged in the complaint, "was more than eighty years old, sick and greatly enfeebled both in body and mind," while the consideration given for the property was certainly grossly inadequate, if, indeed, there was any consideration at all. It would seem, in addition, that the allegations of undue influence, or rather of complete ascendency over the will of the aged man by his young relative, are full and complete. It is not necessary to state in a complaint all the facts going to establish the fact of undue influence; such facts are, for the most part, evidentiary; and so may be made matter of proof. In this case, the necessary allegations—those as to the relations of the parties, particularly the great age and feebleness of intellect of the grantor, and the persistent and long-continued importunities of the grantee, the gross inadequacy, or rather the want of consideration, and other circumstances surrounding the transaction, and the nature of the transaction itself—are fully made; and these, joined with the general allegation of undue influence and other allegations indicating fraud, are sufficient.

"Fraud is not a thing susceptible of ocular observation or physical demonstration. Yet its existence in a given case may be sufficiently demonstrated for judicial purposes, and to warrant judicial action, by intrinsic evidence of unfairness in the contract or transaction itself." *Burch* v. *Smith*, 15 Tex. 219, 65 Am. Dec. 154. See, also, 1 Story, Eq. Jur. 246; *Reed* v. *Peterson*, 91 Ill. 288; *Fisher* v. *Bishop*, 108 N. Y. 25; *Cadwallader* v. *West*, 48

Mo. 483; *Miller* v. *Rivers,* 138 Pa. 270; *McCormick* v. *Malin,* 5 Blackf. 509; *Marshall* v. *Billingsly,* 7 Ind. 250; *McLean, Admr.,* v. *Equitable Life, etc., Society,* 100 Ind. 127.

The authorities adduced by appellants are not in point, as we think.

In *Darnell* v. *Rowland,* 30 Ind. 342, the well established rule is stated, that weakness of mind alone does not render one incapable of making a contract. Such weakness of mind, however, the opinion states, may become a controlling circumstance when connected with other facts tending to establish fraud. *Wray* v. *Wray, supra,* is rather against the position taken by appellants. In *Jagers* v. *Jagers,* 49 Ind. 428, the rule is repeated, that mere "feebleness of mind has never been held sufficient to set aside a deed, where the grantor was of sound mind." The court, in that case, however, adds, that "some of the authorities hold that it may be taken into consideration, in connection with other circumstances." In that case, no other circumstances were stated in the complaint. The case is quite unlike the one now before the court. The grantor in that case was of sound though feeble mind, and the representations made to him by his wife were concerning matters equally within the knowledge of both parties.

What has been said concerning the demurrer to the complaint applies, in great measure, to the second assignment of error, that the court erred in its conclusions of law on the facts found. The facts found by the court are, substantially, the facts which are alleged in the complaint, and which, by the assignment of error, are thus admitted to be true.

That the finding by the court was not more complete, or that some of the issues were not passed upon in the

finding, can not be considered under this assignment of error.

To bring an alleged error before this court for review, it must, in general, be first brought to the attention of the trial court, so that, if the error in fact exists, it may be corrected in that court. There was in this case no motion for a *venire de novo,* no motion for judgment for appellants on the finding, nor any reason given in the motion for a new trial calling the court's attention to any error in the finding, if such error existed.

But we have carefully considered the findings made by the court, and are of opinion that all the material facts put in issue by the pleadings are fully found. From these facts so found, the conclusions of law stated necessarily follow, that the deeds in question are void, and that appellees and appellant Joseph R. Ashmead are the owners, as tenants in common, of the lands therein described and attempted to be conveyed, and that said lands should be partitioned amongst them in the proportions named.

The reasons given for the motion for a new trial are, that the finding is not sustained by the evidence, and that it is contrary to law. There is certainly evidence in the record to support the finding, and that, according to the well known rule of this court, is sufficient. Why the finding should be held contrary to law, we are not informed. The finding is within the issues presented by the pleadings, and is supported by the evidence; it can not, consequently, be contrary to law.

We have found no available error in the record. The judgment is therefore affirmed, with costs.

Filed March 9, 1893.