**GIBSON–LEWIS CORPORATION,**
Appellant (Plaintiff Below),

v.

**NORTHERN INDIANA PUBLIC SER-VICE COMPANY, Gough Construction Company, Inc., and Harris Trust and Savings Bank,** Appellees (Defendants Below).

No. 37A03–8705–CV–0136.

Court of Appeals of Indiana,
Third District.

June 29, 1988.

Robert J. Hoffman, William J. Hancock, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Robert F. Peters, Lucas, Holcomb & Medrea, Merrillville, for appellees.

STATON, Judge.

Gibson–Lewis Corporation (Gibson) appeals that portion of the trial court's judgment awarding it only $20,800.00 for certain work it completed at the Rollin M. Schahfer Generating Station in Jasper County, Indiana (the project). Gibson also appeals the trial court's award of pre-judgment interest and attorney's fees.

We have restated the issues as the following:

1. Was a valid and binding written contract formed between Gibson, a sub-subcontractor on the project, and Gough Construction Company (Gough), a subcontractor?

2. Absent a contract, did the trial court err in calculating Gibson's award? [1]

Affirmed.

In September or October of 1981, Gough asked Gibson to submit a written bid document indicating how much it would charge to perform certain work on the project. Thereafter, Gibson did indeed submit a written bid document which stated that it would perform fireproofing and other work on a portion of the project.

On December 10, 1981, Gough sent Gibson a letter of intent, advising Gibson that it had been selected as a sub-contractor. The letter of intent stated that a subcontract would be completed for Gibson's signature.

On December 22, 1981, Gibson sent Gough a written acknowledgment and began preparations for the work. On that same date, Gough sent Gibson an unsigned standard form subcontract.

However, Robert Carpenter, an officer of Gibson, changed the form contract by inserting an additional typewritten clause which stated: "ISA I–106, dated 1–19–82, is included in this contract." Carpenter also prepared an "Addendum to Subcontract" using a preprinted form (I–106). The addendum stated, in part:

"Fireproofing of columns only on Column Row 25 to roof heighth (sic)...."

Carpenter attached the addendum to Gough's form contract. He signed both the addendum and the form contract.

Upon receipt of the documents, Joseph Gent, vice-president of Gough, signed the original form contract, but not the addendum.

No further conversations or correspondence took place between the parties until May 20, 1982. At that time, the project's owner and the general contractor informed Gibson that the beams and braces on Column Row 25—as well as the columns—would have to be fireproofed.

Thus, on July 1, 1982, Gibson informed Gough, in writing, that it would proceed to do the work, but that it would treat the work as additional work to its contract.

Gibson also informed Gough that since the work was specifically excluded from the contract, a written directive was necessary. This requirement was included in the addendum to the original contract form.

At first, Gough refused to issue a written directive. Thus, Gibson refused to do the work. After Gibson completed the fireproofing of the columns on Column Row 25, it removed its equipment from the job site.

After receiving a telegram from Gough directing Gibson to fireproof the beams and braces on Column Row 25, Gibson returned to the site and performed the work.

The trial court, in issuing its findings of fact and conclusions of law, found the following: (1) that there was no meeting of the minds between the parties and, hence, no contract; (2) that the bid, notice to proceed, and confirmation of understanding constituted a sufficient agreement so that Gibson could recover the amount of its bid for the other work it performed on the project; (3) that because the work Gibson performed on the beams and braces on Column Row 25 was not covered by those documents, Gibson was entitled to the quantum meruit value of its services in doing that work; and (4) that while Gibson claimed that the value of those services

---

**1.** Defendant Northern Indiana Public Service Company (NIPSCO) was the owner of the project. Defendant Harris Trust & Savings Bank was the trustee. The defense of all defendants was assumed by defendant Gough pursuant to certain written indemnity agreements. Appellant's Brief, page 2. Townsend & Bottum, Inc., a non-party, was the project's general contractor.

was $67,785.95, it was only entitled to $20,-800.00 since "a very high percentage" of the cost in fireproofing the beams and braces on Column Row 25 was caused by Gibson's own actions in removing its equipment from the site, then returning later to perform the work.

In reviewing the trial court's findings of fact, we neither weigh the evidence nor determine the credibility of witnesses. Findings of fact will be disturbed only if the record discloses that there were neither facts nor inferences on which to base the findings. In other words, this Court will disturb the trial court's findings of fact only when such are clearly erroneous. *Greenfield Builders and Erectors, Inc. v. Fellure* (1982), Ind.App., 443 N.E.2d 87, 90, *reh. denied. See also* Ind. Rules of Procedure, Trial Rule 52(A). Our scope of review also allows us to determine whether the law was correctly applied to the facts. *Laws v. Lee* (1984), Ind.App., 471 N.E.2d 1229, 1232, *reh. denied.*

■ Gibson first disputes the trial court's finding that there was no meeting of the minds and thus no written contract formed between Gibson and Gough. Gibson contends that by signing the original contract form Gough also accepted the terms of the addendum. However, there was conflicting evidence at trial. Robert Carpenter, an officer of Gibson, testified that Joseph Gent, then vice-president of Gough, returned the original contract form to him signed and with the addendum attached. Record at Volume 6, pages 895–96. Yet, Gent testified that when he signed the original contract, the addendum

was not attached to the document. Record at Volume 5, pages 726–27.

As stated above, on appeal, we neither weigh the evidence nor determine the credibility of witnesses. Further, where there is probative evidence to support the conclusion that there was no meeting of minds between the parties to an alleged contract, the Court of Appeals will not disturb that conclusion. *Continental Grain Co. v. Followell* (1985), Ind.App., 475 N.E.2d 318, 321, *trans. denied.*

Thus, because the trial court found that there was no meeting of the minds between Gibson and Gough, it was correct to conclude that no written contract was formed between them. Before there can be said to be an agreement between the parties, there must be a meeting of the minds of such parties upon the matter attempted to be agreed upon, and no contract can be said to have been created between the parties whose minds have not agreed upon one and the same thing. *Miller v. Sharp* (1912), 52 Ind.App. 11, 100 N.E.2d 108, 110.[2]

■ Therefore, absent an agreement regarding the beams and braces on Column Row 25, Gibson was entitled to the quantum meruit value of its services in completing the fireproofing work on those beams and braces. *See Dyer Construction Co., Inc. v. Ellas Construction Co., Inc.* (1972), 153 Ind.App. 304, 287 N.E.2d 262, 264; and *Coleman v. Chapman* (1966), 139 Ind.App. 385, 220 N.E.2d 285, 288.[3]

■ Gibson next contends that the trial court erred in calculating its award. If it was only entitled to the quantum meruit

**2.** In *Miller*, the Court stated:
An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties. And to do this it must in every respect meet and correspond with the offer neither falling within nor going beyond the terms proposed, but exactly meeting them at all points, and closing with them just as they stand.
*Id.*

**3.** Apparently, the trial court determined that an agreement regarding the beams and braces in Column Row 25 was not included in the bid,

notice to proceed, and confirmation of understanding. If such an agreement had been included in those documents, Gibson would not have been entitled to anything over the amount of its bid. However, this issue was not raised by the appellee, and we will not address it. *See Ashmead v. Reynolds* (1892), 134 Ind. 139, 33 N.E. 763 (Before an alleged error can be brought before this court for review, it must, in general, be brought to the attention of the trial court so that, if the error in fact exists, it may be corrected in that court. *Id.* 33 N.E. at 765).

value of its services, Gibson contends that the trial court erred by reducing that value from $67,785.95 to $20,800.00. Gibson states that when it was informed that the beams and braces of Column Row 25 would have to be fireproofed in addition to the columns, it informed Gough that this work was specifically excluded from the contract and that a written directive was a contractual prerequisite to any performance on those beams and braces.

Section 8 of the addendum states, in part:

Subcontractor [Gibson] shall not be obligated to perform changes or extra work unless Subcontractor shall receive a written directive therefor....

Record at Volume 5, page 731.

Gibson states that it came back to do the work only after it received directions in writing to do so. Meanwhile, Gibson removed its equipment and cleaned the site to avoid idle manhours and material cost.

In essence, Gibson is asking us to determine that its actions in demobilizing were justified. In other words, Gibson is asking us to reweigh the evidence. This we cannot do.

■■■ Absent a written contract between the parties, the prejudgment interest and attorney fee provisions of the alleged contract do not apply. However, Gibson contends that the trial court's award of pre-judgment interest was erroneous since the court applied interest only to the undisputed portion of Gibson's claim. A pre-judgment interest award is justified only when there has been an unreasonable delay in payment of *ascertainable* amounts. *See Board of School Trustees of Baugo Community Schools v. Indiana Education Employment Relations Board* (1980), Ind. App., 412 N.E.2d 807, 811.

Because there was a good faith dispute as to whether Gibson was entitled to addi-

tional compensation for work done on Column Row 25 and as to how much that work was worth, it was not error for the trial court to limit pre-judgment interest to the undisputed portion of Gibson's claim.

■■■ Gibson also disputes the interest rate determined by the trial court. However, IC 1974, 24–4.6–1–102 (Burns Code Ed., 1982 Repl.), supports the trial court's determination that the interest should be at the "legal" rate (eight percent per annum).

■■■ Finally, Gibson's contentions to the contrary, the trial court's award of attorney's fees was proper.[4] Gibson contends that the trial court's award of $20,000.00 in attorney's fees was not within the range of evidence presented at trial. Gibson presented evidence that he had incurred attorney's fees totalling $78,899.93. Gough's expert witness testified on direct examination that a reasonable award would be between $15,000.00 and $18,000.00. On cross-examination, he admitted that his estimate was based on a review of the complaint and answers but did not depend on further pleadings or discovery. He then stated that in this case *discovery alone* would have probably constituted 200 to 240 hours of an attorney's time at the rate of $75.00 an hour, or $15,000.00 to $18,000.00.

However, in *Fox v. Galvin* (1978), 177 Ind.App. 654, 381 N.E.2d 103, the Court held that even if no evidence is offered in proceedings in which it is proper for the trial court to award reasonable attorney's fees, the court may do so, and its decision is reviewable only for an abuse of discretion. *Id.,* 381 N.E.2d at 108.

Quoting *Winslow Gas Co. v. Plost* (1919) 69 Ind.App. 611, 122 N.E. 594, the Court stated:

[A] court ... is itself an expert as to the value of attorney's services, and may apply its own knowledge and profession-

4. Gibson was the holder of a valid mechanic's lien and judgment was entered against NIPSCO pursuant to IC 1909, 32–8–3–9 (Burns Code Ed., 1980 Repl.). Thus, Gibson was also entitled to attorney's fees pursuant to IC 1909, 32–8–3–14

(Burns Code Ed., Supp.1988). IC 32–8–3–14 provides that if the lienholder shall recover judgment in any sum, he shall also be entitled to recover "reasonable" attorney's fees.

al experience in determining the value of the services rendered....

*Fox, supra,* 381 N.E.2d at 107.

Considering the circumstances of this case, we cannot conclude that the trial court abused its discretion. *See G.C. Templeton v. Sam Klain & Son, Inc.* (1981), 425 N.E.2d 89, 95 (The reasonableness of the fee will turn on the circumstances of the case).

Affirmed.

GARRARD, P.J., concurs with separate opinion.

CONOVER, J., concurs with GARRARD'S concurring opinion.

GARRARD, Presiding Judge, concurring.

I concur with one observation concerning the award of reasonable attorney's fees. Factors to be considered in establishing fees are enumerated in the Rules of Professional Conduct, Rule 1.5. That counsel may have expended 200 to 240 hours in discovery does not necessarily mean it was reasonable to do so under all the circumstances or that a reasonable fee would necessarily include that number of hours at a "regular" hourly rate.