**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**C. GREGORY FIFER**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE:

**STEPHEN W. VOELKER**
Voelker Law Office
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SWAMI, INC., et al., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1208-MF-398 |
| | ) | |
| FRANKLIN DRYWALL II, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Susan L. Orth, Special Judge
Cause No. 10C01-0909-MF-715

**April 29, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Swami, Inc. contracted with Appellee-Plaintiff Franklin Drywall II, LLC, for the completion of certain drywall work. Prior to execution of the contract terms, Swami terminated the contract. Franklin Drywall filed a mechanics lien for the outstanding funds it claimed to be owed by Swami and subsequently filed suit to foreclose on its lien.

Below, the parties disputed whether certain delays in completing the drywall work were the fault of Franklin Drywall and whether the work was completed in an acceptable fashion. Following a bench trial, the trial court found in favor of Franklin Drywall. The trial court also awarded Franklin Drywall attorney's fees. We conclude that the trial court's determination that Franklin Drywall was entitled to recover $48,681.60 was not clearly erroneous, the trial court did not err in awarding attorney's fees to Franklin Drywall, and the trial court erred in finding that a certain mortgage debt should not be considered to be a lien against the property in question. Consequently, we affirm in part, reverse in part, and remand for further proceedings consistent with this memorandum decision.

## FACTS AND PROCEDURAL HISTORY

Swami is a Georgia corporation which owns certain real estate in Clark County, where, in early 2009, it planned to build a Days Inn Hotel (the "Property"). On January 14, 2009, representatives for Swami and Franklin Drywall entered into a contract (the "Contract") for the completion of certain drywall work at the Property by Franklin Drywall. For the most part, Swami was represented in the relevant negotiations and interactions by Umang Bhatt ("U. Bhatt") and Ramesh Bhatt ("R. Bhatt"), and Franklin Drywall was represented by its owner, Adrian Franklin. The relevant portions of this Contract appear

below, verbatim:[1]

(1)    All work shall be performed in accordance with commercial code and standard adopted by Clark County, State of Indiana and requirements of the authorities having jurisdiction.  Also this work to be performed and material must be use as Owner and Wyndham corp. (Days and Suites) final approval. Subcontractor shall be responsible for all OSHA rules.

(2)    This agreement consist of conditions of the contract (General, Supplementary and other conditions), Drawing, Specifications, Addenda, issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement.  These form the contract, and are as fully a part.  Of the Contract as if attached to this Agreement or repeated herein.   The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements either written or oral.   An enumeration of the contract documents, other than modification, appears in Item No 11

(3)    Scope of Work (The Work of this Contract)
Attach Exhibit "A"
All work shall be completed in timely fashion as specified in Exhibit "A"

(4)    Total Contract Sum
Total price for labor, materials, equipments and tools for this contract is $106,000

**\*\*\*\***

(6)    If the Subcontractor defaults or neglects to carry out the work in an accordance with this agreement and fails to perform in satisfactory manners, the Owner will notified to the Subcontractor.   The Subcontractor may commence and continue correction in timely manner.   If work does not performed in accordance with commercial code and standard or no reply from the Subcontractor within 2 days, Owner my get work done by other agent at expense of this the Subcontractor.   In such case the Owner may cancel this agreement by written notification to the Subcontractor without prejudice to the other remedies the Owner may have.

**\*\*\*\***

(10)    Any alteration and/or deviation from the drawing and specification involved extra cost shall be in writing and shall be approved by the all parties before proceeding the work.

(11)    The Subcontractor warrants to the Owner that all materials, equipment and Fixtures under this agreement will be good quality and new.   The Subcontractor guarantees also all work done under this agreement against defective and/or fault workmanship for a period of year from completion of the

---

[1] All correspondence between the parties appears verbatim.

3

project. Such defective work and/or equipment and fixture shall be replaced or corrected without any additional cost to the Owner.

****

EXHIBIT "A'
Scope of Work
1.      Preparation for Drywall

****

H       There shall be knock down[2] finish in all guest rooms, bathrooms, pantry, manager room, work area, exercise room and vending area (three floors hallways, lobby, registration and elevator entrance will be wallpaper. Rest of area knockdown)

****

Total price for labor, materials, equipments, tools, other supply and services including taxes $106,000.00[3]

****

Timetable for starting and completion
1.      After completion of all require rough in and getting inspected owner shall give five days to subcontractor notice to commence work. During this time subcontractor shall order materials. Owner and subcontractor shall acknowledge date and time of this notice.
2.      Subcontractor shall have 2 weeks to hang all drywall and 2 weeks to complete all dry wall work.
Penalties
1.      Both party understand that there shall be total seven weeks (35 days) to complete this work once owner give notice to commence work. There shall be $ 500.00/week penalties after 35 days of contract. This penalty clause does not prejudice other remedies the Owner may have.

Plaintiff's Ex. 4, Appellants' App. Vol. 1, pp. 143-46. The contract also provided a schedule

by which Franklin Drywall was to be paid.

On April 14, 2009, Franklin sent a letter to Umag Parag, a representative of Swami,

which stated as follows:

---

[2] "Knock down" is a term of art used by drywall appliers. After the drywall is hung, a powdered mix is mixed with water and sprayed on the wall. This gives a "splatter effect." Once the mixture is sprayed on the wall, a drywall knife is used to apple pressure to the applied mix to achieve the desired texture.

[3] The parties added a handwritten sentence which was initialed by both parties and reads as follows: "Except Owner will supply all paint for knock down." Appellants' App. p. 145.

4

I am writing this letter to inform you that Franklin Drywall II, LLC is not a painting contractor. We were hired to hang, finish, splatter the walls and popcorn the ceiling. You requested that paint be placed in the drywall mud at your cost for the paint. I have no problem placing paint in the mud for the walls but you must understand that if we have to paint the walls and ceilings, there will be a charge of $2.50 a finished square foot for labor only. This is per floor. (71' x 184').

Plaintiff's Ex. 6. On or about April 15, 2009, U. Bhatt responded, in writing, to the April 14, 2009 letter from Franklin. In this writing the parties initialed a sentence that read: "Your will compete wall and ceiling texture as we agreed according to contract at no additional change order." Defendant's Ex. C.

The parties subsequently entered into a "Change Order" Amendment to the Contract on May 7, 2009. The "Change Order" Amendment provided as follows:

Following is change agreed by and between Owner and sub contractor:
1.      Sub contractor shall complete all knock down finish as agreed in our original agreement dated 1/14/09. The knock down should have consistent color, texture, and should resemble sample shown to sub contractor (sample # litex [Commercial Texture System ("CTS")] 1000). The knock down should be a final finished product. If chipped (knock down) it should have same color inside it.
2.      Sub contractor shall clean, paint and install all doors and frames (should be plum and lavel) in the new building (days and Suites) no glass door.
3.      Sub contractor shall paint all bathroom ceiling, breakfast area ceiling (white color without popcorn), staircases walls, laundries room, electrical, water heater room. (except wall paper)
Timing:
2nd and 3rd floor should be completed (except drop ceiling) no later than May 15th 2009. 1st floor should be completed (except drop ceiling) no later than May 22nd 2009. Owner makes final selection of drop ceiling panels. (Sand Micro from certain teed)
All remaining work should be completed on later than May 31st 2009.
Owner and sub contractor jointly prepare punch list end of May 2009.
Payment:
1.      Door            $2,500.00
2.      Painting        $3,000.00

5

Total   $5,500.00
Owner shall make final payment after completion of all agreed work less material purchased for sub contractor for this work.
This agreement was reached after discussion of all issues and was paid 1st floor hanging completely even though it was not finished.  This was based on that sub contractor will finish project completely work mentioned above.

Plaintiff's Ex. 7, Appellants' App. p. 149.

The parties encountered multiple delays in the completion of the project.  Each party alleged that the other party was responsible for said delays.  For its part, Swami claimed that Franklin Drywall failed to complete the work in a satisfactory manner in the timeframe stated in the Contract.  Specifically, Swami claimed that some of the knockdown finishing completed by Franklin Drywall was defective and needed to be redone.  Franklin Drywall disputed these claims and asserted that any delays were caused by Swami or other subcontractors hired by Swami.  In an apparent attempt to resolve the parties' dispute regarding the delay and to have the project completed, Swami granted Franklin Drywall an extension of time under which to complete the drywall work covered by the Contract.

In a letter to U. Bhatt dated June 15, 2009, Franklin informed U. Bhatt that he believed that the delay in the project was caused by decisions and actions of Swami, not by any act of Franklin Drywall.  Franklin indicated that some of the delay was caused by mistakes made by other subcontractors.  Franklin further indicated that at least some of the delay could be attributed to a delay in access to necessary supplies that were to be provided by Swami, such as paint and hardware.  In addition, Franklin informed U. Bhatt that some of the requested repairs, which were not caused by, or the fault of, Franklin Drywall but rather Swami and other subcontractors, would not be completed without additional compensation.

6

Franklin also stated that he had been "100%" finished with the drywall hang, finishing, and knock down on all three floors and the grid on the third floor for at least forty-five days but had not been paid for the work. Plaintiff's Ex. 8. On June 23, 2009, Swami terminated the Contract with Franklin Drywall.

On July 20, 2009, Franklin Drywall filed a mechanic's lien in the office of the Clark County Recorder as Instrument Number 200913470. On September 24, 2009, Franklin Drywall filed a complaint seeking to foreclose its mechanic's lien against the Property. Swami responded and filed a counterclaim against Franklin Drywall on October 14, 2009. On March 15, 2012, following a bench trial, the trial court entered findings of fact, conclusions thereon, and judgment in favor of Franklin Drywall. Soon thereafter, Franklin Drywall filed a motion and supporting affidavit of its counsel seeking an award of attorney's fees. On April 16, 2012, Swami filed a motion to correct error, which was subsequently denied by the trial court. This appeal follows.

## DISCUSSION AND DECISION

Swami contends that the trial court erred in numerous ways. We restate Swami's contentions as follows: (1) whether the trial court erred in finding that Franklin Drywall was entitled to recover $48,681.60; (2) whether the trial court erred in finding that Swami was not entitled to set off some of the amount due to Franklin Drywall or recover under its counterclaim against Franklin Drywall; (3) whether the trial court erred in finding that Franklin Drywall was entitled to recover attorney's fees; and (4) whether the trial court erred in finding that a certain mortgage debt should not be considered to be a lien against the

Property.

> When matters are adjudicated at a trial by the court without a jury, Trial Rule 52 governs the trial court's use of findings and conclusions. Trial Rule 52 provides that a trial court "shall find the facts specially and state its conclusions thereon" either *sua sponte* or upon "the written request of any party filed with the court *prior to the admission of evidence*." T.R. 52(A) (emphasis added).
>
> Upon appellate review, a judgment under Trial Rule 52 may be reversed only when clearly erroneous, that is, "when the judgment is unsupported by the findings of fact and conclusions entered on the findings." *Nelson v. Marchand*, 691 N.E.2d 1264, 1267 (Ind. Ct. App. 1998). Findings are clearly erroneous when there is no evidence or reasonable inference from the evidence to support the findings, and we review only the evidence and reasonable inferences therefrom that are favorable to the judgment without reweighing evidence or reassessing the credibility of witnesses. *Id.* We owe no deference to a trial court, however, on matters of law, reviewing these *de novo*. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006).

*Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied.*

## I. Whether the Trial Court Erred in Finding that Franklin Drywall Was Entitled to Recover a Total of $48,681.60

In arguing that the trial court erred in finding that Franklin Drywall was entitled to recover a total of $48,681.60, Swami challenges a number of the trial court's findings and conclusions thereon. The trial court determined that Franklin Drywall was entitled to recover $26,235.00 under the terms of the Contract, that Franklin Drywall held a valid mechanic's lien for this amount, and that Franklin Drywall was entitled to recover an additional $22,446.60 for work completed in addition to the work included under the terms of the Contract.

Swami argues that the trial court's findings regarding the testimony of its expert, Alan Muncy, were clearly erroneous. The trial court found that Muncy agreed with instructions

8

for the application of drywall mud and testified that it was necessary to apply primer before applying the paint/drywall mud mix. Upon review, we conclude that the record supports these findings. Specifically, Muncy testified that typically, "[y]ou prime the drywall prior to the application of [the knock down] texture." Tr. p. 146. In addition, the report generated by Muncy and admitted as a trial exhibit indicated that a basecoat or primer was necessary to obtain the desired knock down finish.

Swami also argues that Franklin Drywall could not hold a mechanic's lien for an amount in excess of the contract price. The trial court, however, found that Franklin Drywall held a valid mechanic's lien for $26,235.00, or the amount still owed to Franklin Drywall under the terms of the Contract. As such, this finding is not clearly erroneous.

Swami also argues that the trial court erred in finding that the parties entered into an oral agreement for Franklin Drywall to complete additional painting work and that Franklin Drywall was entitled to compensation for this additional painting work. In support of this argument, Swami claims that the painting work was not included in the original scope of the project outlined in the Contract or in the Change Order Amendment to the Contract. However, during trial, Franklin testified that the parties entered into a subsequent oral agreement that Franklin Drywall should complete additional painting work and that Franklin Drywall did complete this work. The trial court appears to have found Franklin's testimony to be credible because it found that the parties agreed that Franklin Drywall would complete the additional work, Franklin Drywall completed the additional work, and, as a result, was entitled to be paid for said work. The trial court determined the reasonable value of the work

was $0.60 per square foot and, based on this determination, found that Franklin Drywall should be paid $22,446.60. This finding is not clearly erroneous. *See generally, Gibson-Lewis Corp. v. N. Ind. Pub. Serv. Co.*, 524 N.E.2d 1316, 1318 (Ind. Ct. App. 1988) (providing that the Appellant was entitled to the *quantum meruit* value of its services in completing work not covered by a written contract).

Moreover, we are unconvinced by Swami's argument that Franklin Drywall is not entitled to recover any additional money because it did not complete the agreed-upon work. Franklin testified that he completed all drywall work under the Contract and that the work passed inspection. Franklin testified that he had reached a subsequent verbal agreement with representatives of Swami with respect to certain painting work that was completed by Franklin Drywall, and that any deficiency in the work from Swami's desired outcome was a result of Swami's decision to not complete the project in accordance with normal construction procedures. In light of this testimony, the trial court found that Franklin Drywall completed certain tasks and should be paid for such work. Swami's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *Jones*, 953 N.E.2d at 614.

## II. Whether the Trial Court Erred in Finding that Swami Was Not Entitled to Set Off Some of the Amount Due to Franklin Drywall or Recover Under Its Counterclaim Against Franklin Drywall

Swami also contends that the trial court erred in failing to set off or reduce Franklin's award by the amount spent by Swami to cure Franklin's allegedly deficient work. Swami filed a counterclaim in which it asserted that Franklin Drywall breached the parties' contract,

and, as a result, Swami was entitled to recover the money that it spent curing Franklin Drywall's allegedly deficient work. Following trial, the trial court determined that Swami's counterclaim should be dismissed and that Franklin Drywall was entitled to recover the full amount remaining under the contract because any alleged deficiency in the work completed by Franklin Drywall resulted from Swami's actions, not any act of Franklin Drywall.

Generally, "[i]n breach of construction cases, the proper measure of damages is either 1) the difference between the value of the building as constructed and what its value would have been had it been constructed in accordance with the contract, or 2) the reasonable cost of curing the defects to make the building conform to the contract." *Clark's Pork Farms et al. v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1297 (Ind. Ct. App. 1990). However, we have previously concluded that "a contractor who builds a structure according to plans and specifications supplied by the building owner is not to be held liable if the plans and specifications prove defective." *Millner v. Mumby*, 599 N.E.2d 627, 630 (Ind. Ct. App. 1992). We see no reason why this would not be equally true if the allegedly defective work results from actions taken and decisions made by an owner of a property who is acting as a general contractor of a construction project.

Swami's challenge to the trial court's decision is based on its claim that the work completed by Franklin Drywall was deficient. Here, the trial court found that Franklin Drywall "did what [it] was required to do under the contract and change order," Appellants' App. p. 13, that Franklin Drywall completed the work in a satisfactory manner, and that any claimed non-satisfactory finished work product was a result of actions taken and decisions

11

made by Swami, not Franklin Drywall.  Specifically, the trial court found as follows:

> 22.    The specifications used by Swami were incorrect.  The oversight done
> by Swami on this project as the General Contractor was equally incorrect.
> This combined to achieve Swami's current problems with the drywall.
> 23.    This contract became impossible to perform by Franklin.  When a
> contract becomes impossible, nonperformance is excused. *Hipskind Heating
> & Plumbing Co. v. General Industries, Inc.*, 194 N.E.2d 733 (Ind. App. 1963),
> *Leas v. Patterson*, 38 Ind. 465 (Ind. 1871).

Appellants' App. p. 13.  As a result, the trial court determined that Franklin Drywall was

entitled to recover the full amount remaining under the contract and that Swami was not

entitled to any "set off" of the award.

The trial court's findings are supported by the record.  Franklin's testimony indicated

that it was difficult for Franklin to communicate with representatives from Swami regarding

the project, that Swami and some other subcontractors damaged the completed drywall work,

that Swami acted in a manner which made it impossible for Franklin Drywall to complete the

work in a time frame and manner that satisfied Swami, and that Swami expected Franklin

Drywall to fix mistakes and clean up after other subcontractors at no additional cost.

Franklin testified that issues arose because Swami's representatives did not have experience

with construction management.  For example, Franklin testified that representatives from

Swami decided to have finishing products like doorjambs, tile, and bathroom counters

installed before the drywall work was complete, even though Franklin told them that the

drywall work needed to be completed first.  According to Franklin, representatives from

Swami also waited until after drywall was hung to have some electrical work done that

should have been completed before drywall installation.  This decision led to holes in the

12

drywall that were not caused by, or the fault of, Franklin Drywall. In addition, Franklin Drywall had to have some of its work, specifically work on the ceiling, re-inspected because of the deficient work of, or damage caused by, either Swami or other subcontractors. Further, when Franklin notified representatives of Swami that Franklin Drywall would not correct any more issues resulting from actions taken or decisions made by Swami or other subcontractors without additional compensation, representatives from Swami removed Franklin Drywall from the project.

In arguing that the trial court's findings were clearly erroneous and that the award should be set off by the additional costs incurred by Swami, Swami relies on the testimony of U. Bhatt and Muncy. U. Bhatt testified that Swami had to spend approximately $47,000 to cure the defects in Franklin Drywall's work before it could open its hotel on the Property and that he believed that the value of the Property was diminished by approximately $200,000 as a result of Franklin Drywall's allegedly defective work. Muncy, for his part, opined that the drywall work was of poor quality and that it would cost approximately $191,000 to redo the work at a commercially reasonable standard. Swami's claim, however, amounts to an invitation for this court to reweigh and reassess Franklin's and Muncy's testimony, which, again, we will not do. *See Jones*, 953 N.E.2d at 614.

Because the trial court's findings and conclusions thereon are supported by Franklin's testimony, we conclude that such findings are not clearly erroneous. As such, the trial court did not err in determining that Swami was not entitled to have any of the funds awarded to Franklin Drywall set off by the additional costs that it claims to have incurred in order to

13

complete the work at a satisfactory level.

### III. Whether the Trial Court Erred in Finding that Franklin Drywall Was Entitled to Recover Attorney's Fees

Swami also contends that the trial court erroneously awarded unspecified attorney's fees to Franklin Drywall. Swami, however, concedes that the parties stipulated that under the mechanic's lien statute, Franklin Drywall would be entitled to attorney's fees if it prevailed at trial. Swami further concedes that a stipulation is a voluntary and binding agreement between the parties.

After finding in favor of Franklin Drywall on the merits of its claims, the trial court also found that Franklin Drywall was entitled to recover attorney's fees. The trial court limited the award of attorney's fees to the sum of the mechanic's lien. The trial court further found that the specific amount of fees awarded would be decided at a subsequent hearing. Swami has presented no authority suggesting that it was improper for the trial court to follow this procedure in awarding attorney's fees, and we fail to see how the trial court erred in this regard. On remand, the trial court should conduct a hearing to determine the appropriate award of fees, if it has not yet done so.

### IV. Whether the Trial Court Erred in Finding that a Certain Mortgage Debt Did Not Qualify as a Lien Against the Property

Swami contends, and Franklin Drywall concedes, that the trial court erred in finding that MainSource Bank's "Mortgage, Security Agreement, and Fixture Financing Statement" dated July 10, 2009 (the "July 10, 2009 debt"), which financed the construction of the Property, should not be considered to be a lien on the Property. It is undisputed that Swami

14

was administratively dissolved by the Georgia Secretary of State on May 16, 2008, but was subsequently reinstated. The trial court found that because "[the July 10, 2009 debt] was incurred **after** the dissolution of [Swami] it should not be considered to be a lien on the real estate." Appellants' App. p. 8 (emphasis in original). However, Indiana Code section 23-17-23-3(c) provides that "[w]hen reinstatement becomes effective, the reinstatement relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on the corporation's activities as if the administrative dissolution had never occurred."[4]

Because reinstatement relates back to and takes effect as of the date of the dissolution, any business that was done by Swami during the period of dissolution, including securing a loan to finance construction of the Property, would be considered corporate activity upon reinstatement. *See* Ind. Code § 23-17-23-3(c). As such, the trial court erred in finding that the July 10, 2009 debt should not be considered to be a lien against the Property.

## CONCLUSION

In sum, we conclude the trial court's determination that Franklin Drywall was entitled to recover $48,681.60 was not clearly erroneous.[5] We further conclude that the trial court did not err in awarding attorney's fees to Franklin Drywall or in ordering that the amount of said award be determined following a hearing on the matter. In addition, we conclude that the trial court erred in finding that the July 10, 2009 debt should not be considered to be a lien

---

[4] Georgia law is the same as Indiana law in this respect. *See* Ga. Code Ann. § 14-2-1422.

[5] Again, this award encompasses the $26,235.00 remaining to be paid under the contract as well as $22,446.60 for additional work completed by Franklin Drywall.

against the Property. As such, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this memorandum decision.

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

ROBB, C.J., and CRONE, J., concur.